## Case No. 8,948.

MAGIC RUFFLE CO. v. DOUGLAS et al.

[2 Fish. Pat. Cas. 330; Merw. Pat. Inv. 91.][1]

Circuit Court, S. D. New York. Feb., 1863.

PATENTS — THEORY OF GRANT — INFRINGEMENT— BURDEN OF PROOF—ORNAMENT — MACHINE FOR MAKING — INVENTION REQUIRED — RUFFLE PATENT.

1. The public who, through the law, secure to the inventor the exclusive property in his invention for a limited period, receive in return either new, more valuable, or cheaper productions during the lifetime of the patent, and, from its expiration, the free enjoyment of any benefits which may flow from it, forever thereafter.

2. The plaintiff's "ruffle patent" is for a new article of manufacture, and the burden of proof is on the defendants to show, to the satisfaction of the jury, that this article was made before the patentee made it. It is not enough that they raise a doubt in the minds of the jury on that point: they must satisfy them of the fact.

3. The word "ruffle," as used in this patent, means "plaited linen, lace, or muslin, used as

[1] [Reported by Samuel S. Fisher. Esq., and here reprinted by permission. Merw. Pat. Inv. 91, contains only a condensed report.]

an ornament, as for the neck, breast, or wrist," or, as a wider sense, "fine cloth ruffled," that is, ornamentally ruffled.

4. The superior beauty of an ornament, and the rapid sale of the article, are important tests of its utility.

5. If the patentee has so described his new article that it can be made without invention, and has then, bona fide, attempted to describe the best machine for making it, and has failed to describe a practical device, such failure does not avoid the patent unless it be the result of fraudulent intent.

6. A subject-matter to be patentable must require invention, but it is not necessarily the result of long and painful study, or embodied alone in complex mechanism. A single flash of thought may reveal to the mind of the inventor the new idea, and a frail and simple contrivance may embody it.

7. The jury requested to find a special verdict.

This was an action in the case [by the Magic Ruffle Company against Alexander Douglas and Samuel S. Sherwood], tried before Judge Shipman and a jury to recover damages for the infringement of three letters patent. The first, for an "improvement in the manufacture of ruffles," was granted to George B. Arnold, May 8, 1860 [No. 28,244], and assigned to plaintiffs. The claim of this patent was as follows: "The ruffle described, as a new article of manufacture, the gathered cloth A, being secured to the binding B by the single series of stitchers C, which perform the double duty of confining the gathers and of securing the gathered cloth to the binding, substantially as set forth." The second patent, for an "improvement in sewing machines," was granted to George B. Arnold, May 8, 1860 [No. 28,139]. The claim of this patent was as follows: "First. A gathering and feeding mechanism in two distinct parts, so constructed and operated that the gatherer takes hold and moves the cloth up to the needle, leaving it immediately after the stitch is formed, or at the point where it is formed, and the feeder, properly so called, takes hold of and feeds the cloth after the seam is made. Second. I claim the combination of the part E J with the part B G, or their equivalents, operating together substantially as described, and for the purpose specified. Third. I claim regulating the fullness of the gathers by varying the relative throw of the feeding devices substantially as described." The third patent, for an "improvement in sewing machines," was granted to George B. Arnold and Alfred Arnold, September 25, 1860 [No. 30,112], and assigned to plaintiffs. The claim of this patent was as follows: "First. In a sewing machine, the employment of the separator C, or its equivalent for the purpose of separating two pieces of cloth E and F, and thereby protecting F from the action of the gathering mechanism, substantially as set forth. Second. Gathering cloth and stitching or fastening the gathers on a sewing machine by the combined action of the single feeding device A, presser foot B, and separator C, or their equivalents, substantially in the manner described. Third.

Regulating the length of the stitches in the production, of a gathered fabric, by changing the position of the separator C or of C, and the pressure foot B, relatively to the extremity of the path traversed by the feeder A, substantially as set forth."

Glover & Darling and E. W. Stoughton, for plaintiffs.

George Gifford, for defendants.

SHIPMAN, District Judge (charging jury). This suit is brought by the plaintiffs to recover damages for an alleged infringement of certain letters patent, issued in conformity with the act of congress [5 Stat. 117], and purporting to secure to the original patentees the exclusive use of the inventions therein described. The suit embraces three distinct patents, which are easily distinguished by the several names of "Separator," "Double Feed," and "Ruffle" patents. The first named two are for machines, or improvements on machines. The last is for a new article of manufacture, or for an improvement in an article of manufacture. Although the patents were issued to the Messrs. Arnold in the first instance, they subsequently passed into the hands of the present plaintiffs by valid assignments, and whatever rights were originally granted to the patentees now belong to these plaintiffs; and they are entitled to the same redress as the patentees would have been had they still continued to own the patents, and brought the suit themselves.

As I have already stated, the three patents are all embraced in the suit; no doubt, out of abundant caution on the part of the plaintiffs, in order to meet any evidence of infringement of each and all that might be developed on the trial. It appears, however, from the evidence, and is conceded by the plaintiffs, that but two of the patents have been infringed, viz: the separator patent and the ruffle patent. That these two have been infringed by the defendants, there can be no reasonable doubt on the evidence. In other words, there can be no reasonable doubt, on the evidence before you, that the defendants have used a machine, or mechanical contrivance, substantially like that described in the separator patent, the exclusive use to which purports to be granted to George B. and Alfred Arnold, which grant, by assignment, belongs to the plaintiffs in this suit. It is equally clear that they have extensively manufactured ruffles substantially like those described in the ruffle patent, the exclusive right to manufacture which purports to have been granted to George B. Arnold, and which grant belongs, by assignment, to these plaintiffs. You will therefore not be perplexed with what is often a difficult question in patent cases. viz: whether there has been an infringement or not. The great question, then, for the court and jury is, whether or not these patents are valid grants of right? This is the great question, stated as a whole, but a proper examination of the case requires that we should address our attention to several distinct and separate inquiries. I will now point out these several inquiries, and dispose of such of them as properly belong to the court to decide, and submit to the jury such as belong to them to decide.

We will first look at the ruffle patent. The object of every patent is to secure to the patentee, his heirs and assigns, the exclusive property in the invention set forth in the specification, free from all control or invasion by others. The patent is granted upon inquiry, according to the forms of law, and assumes the patentee to be the original and first inventor, and therefore gives him the exclusive property in his invention, for the benign and just object of rewarding him for his creative labors and ingenuity, and stimulating the inventive genius of others. The exclusive property in his invention is secured to him only for a limited period, subject, on certain conditions, to a limited renewal. After that, his invention becomes the property of the public. The public who thus, through the law, secure to the inventor the exclusive property in his invention for a limited period, receive in return either new, more valuable, or cheaper productions during the lifetime of the patent, and from its expiration the free enjoyment of any benefits which may flow from it forever thereafter.

Now let us examine this ruffle patent, and see what it purports to grant. This is a question of law, to dispose of which belongs to the court, and not to the jury. This patent is simple, and I can not better describe the invention than to adopt the language of the claim, and say, that it purports to grant the exclusive right to manufacture and sell "the ruffle therein described, as a new article of manufacture, the gathered cloth A (the ruffled strip) being secured to the binding B (the band), by the single series of stitches C, which perform the double duty of securing the gathered cloth to the binding substantially as therein set forth." The distinguishing features of this article, by which it is materially different from all other ruffles known before, are the single series of stitches, and the unvarying regularity of the plaits or gathers—thus dispensing with the gathering thread, avoiding the injurious process of whipping or scratching the fabric with a sharp needle, and the perforations in the ruffled piece which the needle and thread make in gathering, before sewing on the band, and by pulling out the thread after it was sewed on, or in case the thread was left in, by dispensing with its presence. I repeat, the ruffle patented differs from those that existed before, by the uniformity of the plaits, and by the absence of all whipping or scratching with the needle, with all perforations, except those made by the permanent stitches, and by the absence of an appendage in the shape of a useless thread, in the ruffle after it was finished. The regularity of the plaits, it is obvious, improved the beauty of the fin-

ished article, and the employment of only one series of stitches, one stitch of the series being struck through each plait at the instant of its formation, dispensed with the effect of the whipping process, with the perforations made by the needle in running the old gathering thread, and effectually dismissed the thread from the finished article, wherever it was formerly left in. It is the exclusive right to manufacture this article that this patent purports to grant to Mr. Arnold.

The patent is prima facie evidence that he was the original and first inventor of this article. The defendants deny this, and allege that the same article was made before the plaintiffs or the patentee made it. The burden of proof is on the defendants to show to your satisfaction that this article was made before the patentee made it. It is not enough that they raise a doubt in your minds on that point: they must satisfy you of the fact. The evidence which they offer relates to three kinds of ruffles, viz: old ones made by hand, those made by Chittenden at New Haven, and the bustle tops on Union skirts made by the defendants.

As to the old style of ruffles made by hand, it is difficult to discover from the evidence how they could have been made, except by the slowest process, without the gathering thread, and the perforations of the needle consequent upon its use, or how any approach to uniformity of plaits could have been obtained without whipping or scratching the ruffled piece. You have heard all the evidence on this point, and it is for you to determine whether satisfactory evidence has been submitted to you, that hand-made ruffles were like those which I have stated to you this patent describes.

As to the ruffles alleged to have been made by Chittenden on his machine, and by him given to his wife. Precisely what the character of those ruffles was, if they were made before this "magic ruffle," may be somewhat difficult for you to determine. No specimen of them has been shown to you. How—that is, in what precise form—they were made, does not appear. Whatever was done, appears to have been the result of a casual experiment on a machine; and it is for you to say, whether the evidence satisfies you that an article substantially like that described in this patent, was then produced. As I have already stated, the burden of proof is on the defendants, and it is not enough that they raise a doubt in your minds; they must prove the fact to your satisfaction.

As to the tops of the Union skirts made by the defendants. It is alleged that they are ruffles—substantially like the article described in the plaintiff's patent. Mr. Renwick, a very intelligent gentleman, and an expert in mechanics, has stated that he should call them ruffles. That they are ruffles in a certain sense. there can be no doubt, as one part of them is ruffled or gathered cloth on one side, leaving the other side free;

so is a lady's skirt ruffled, in a certain sense; or even an umbrella or parasol, when it is closed—for it is ruffled cloth gathered at one end or side, and the other left free when the instrument is closed, except as the whalebones keep it extended in one direction.

This term "ruffle," like many others, is often used in a latitudinarian, and often in a purely metaphorical sense. It is applied some times to the disarrangement of flexible surfaces, as to the wrinkling of a once smooth garment, or piece of cloth, sometimes to the agitation or disturbance of the temper. Lord Bacon once said, on a memorable occasion: "They would ruffle the jurors."

But there is a restricted sense in which the term "ruffle" is used, and it is clear that it was used in this patent substantially in that restricted sense. The best definition of the word in this sense which I can find, is that given by an eminent lexicographer: "Plaited linen, lace. or muslin, used as an ornament. as for the neck, breast, or wrist:" and he adds, as a wider sense, "fine cloth ruffled"—that is, ornamentally ruffled. And the author gives a literary example of this meaning of the term, by quoting from Goldsmith the couplet—

"Such dainties to them, their health it might hurt,
It's like sending them ruffles when wanting a shirt."

Now, gentlemen, in view of this definition, which I understand to be the sense in which the term is used in the patent, and illustrated by the article produced in court by the plaintiff, it is for you, in the exercise of plain good sense, to say whether those skirt bustles of the defendants are fairly embraced within it—whether those bustles, though in a certain sense "ruffled," are the articles secured by this patent, and thus antedate this invention. I think you can have no difficulty on this point.

If you find this "magic ruffle" in the old hand-made ruffles, or in the ruffle Chittenden made, or in this skirt bustle, then, of course, the patent is good for nothing. But if you do not find in these, or in either of them, this "magic ruffle," which the patentee claims he first made, and which, upon the evidence, he undoubtedly first introduced into the general market, and to the notice of the trade, then the plaintiffs are entitled to a verdict—provided that it is useful. Of its utility, in the legal sense, you can have no doubt. The superior beauty, and rapid sale of the article, is shown on all sides. The beauty of an ornament is one great test of its utility.

A point of law has been raised as to the validity of this ruffle patent. which I will briefly notice. but it need not trouble the jury. It is claimed that the patent (or specification) must point out a way in which they could be made; and furthermore, that it was the duty of the patentee to point out the best mode known to him, or his patent is

void in its present form. It is conceded that he could cure this defect by a reissue. Now, the rule of law on this subject is this: the inventor is bound so to describe his invention that the article can be made by one skilled in the art, and it is his duty to describe the best mode which he knows. He has carefully described the article; so he claims that one moderately skilled in the use of the needle, and especially one skilled in the art of making ruffles, can not fail to know precisely what is done, and with sufficient care and time could not fail to make the article. I think I could make one myself; and I am sure Mr. Brennan (one of the jurors) who is skilled in the use of the needle, could—give him time. The thing—the "magic ruffle"— is minutely described in all its parts, and the only thing it would seem left for the maker to do, is to fold or plait the cloth evenly, hold it in its place, and stitch it to the band. I grant that this work could not be done rapidly, without the use of some mechanism, but that it could be done with care, operative skill, and time, without invention, there can, I think, be no doubt. Now, the patentee did not intend that it should be done without the use of his improved mechanism, and, as was his duty, he described what he regarded as the best mode, viz: by the use of his double-feed machine or mechanism. It is claimed by the defendants that he has failed in the description of his machine as a practical device. Now, for the purpose of deciding this question, I assume that he has thus failed. What effect does this failure have on his patent? Does it make it void? I answer no, unless he has done it fraudulently, and there is no evidence of fraudulent intent. His attempt to describe his double-feed machine must be deemed, in the absence of any proof to the contrary, to have been made in good faith; otherwise, we must suppose that he intended to make his double-feed patent void by his own act. He having, therefore, so described his ruffle that it can be made without invention, and bona fide attempted to describe the best mode, and failed, does not avoid his patent. Therefore the jury need not trouble themselves with this question. To restate the question for the jury, then, touching this patent for the ruffle, they will inquire: was this magic ruffle a new article of manufacture, or an improved article of manufacture (it is immaterial which we call it), and was the patentee the first to produce it? If it is a new article, and he was the first to produce it, and it was useful, then the plaintiffs are entitled to a verdict irrespective of any question touching the machines, and to such damages as they have actually sustained by the manufacture of the article by the defendants. If you are agreed on this point, of the novelty, usefulness, and first invention by Arnold, of this "magic ruffle," I repeat the plaintiffs are entitled to a verdict, whatever your opinion may be with

regard to the priority of the invention of the separator improvements to the sewing machines. If, however, you should find that the patentee was not the first inventor of this "magic ruffle," then it will be necessary for you to find that he was the first inventor of the separator arrangement before you can give the plaintiffs a verdict; and I think you had better pass upon this question, if you can agree upon it, even if you agree for the plaintiffs on the ruffle patent: and if you bring in your verdict for the plaintiffs, I will inquire of you, how you find on this question of the prior invention of the separator? But whether you can agree or not, on this point, still the plaintiffs will be entitled to a verdict at your hands, provided you find on the ruffle patent in their favor.

I need not describe the invention, as set forth in the separator patent. It has been shown to you, operated in your presence, and fully explained; whosesoever it was, it was a simple but happy conception, which, when reduced to practice, produced surprising results, both in the quality of the article manufactured and the rapidity with which it was turned out. A subject-matter to be patentable must require invention, but is not necessarily the result of long and painful study, or embodied alone in complex mechanism. A single flash of thought may reveal to the mind of the inventor the new idea, and a frail and simple contrivance may embody it. Some inventions are the result of long and weary years of study and labor, pursued in the face of abortive experiments and baffled attempts, and finally reached after the severest struggles, while others are the fruit of a single happy thought. All that can be said on the score of invention against this separator device is, that it belongs to the latter class. But that it was an invention within the meaning of the law, there can be no doubt. The only question is: whose invention was it? Was it Douglas'? or was it Chittenden's? or was it the Arnolds'?

The patent is prima facie evidence that it was the Arnolds' invention, and their joint invention, as the patent is issued to them jointly, inasmuch as there has been no proof inconsistent with the idea that it was their joint product. The burden of proof is on the defendants to show you satisfactorily that it was the invention of some other person. Now I intend to allude only briefly, and in general terms, to the evidence on these points. The defendants claim that they have shown by direct evidence that Douglas first invented and used the separator. You remember the witnesses and the comments of counsel.

The plaintiffs claim that they have proved by direct evidence facts entirely inconsistent with any such conclusion; and they insist especially, that the fact that there was concealment of the defendants' names as the makers, that they screened themselves behind Oakley, and that Douglas took out a patent for his binding gauge, after, he alleges,

he had invented the separator, and had used it in connection with the gauge, with an immense saving of labor, and omitted all mention of it in his patent, and all attempts to patent it separately, are utterly inconsistent with the idea that it was his invention. On the bearing and force of all the evidence upon this point, you must decide.

Did Chittenden first invent and use the separator? Chittenden's device is not claimed to have been invented before the summer of 1859. Arnold and Mrs. Price state explicitly that the separator was applied to her machine by Arnold in the summer of 1858, before they went to Coleman for the purpose of having a model made, in order to apply for a patent, which was in August, 1858. It is for the jury to say whether they state the truth. They state in detail the character of the device and its surprising effects. Now, if they state truly, and the jury find that the conception of this invention was complete, and its success demonstrated at that time, as stated by them, they can have no difficulty in fixing the date of Arnold's invention prior to that of Chittenden's, assuming this to have been made in the summer of 1859, which he and Mr. Winchester fixed as the date of his. The reason why a delay was made in taking out the patents they allege was the erroneous information obtained from Coleman.

It is for you to determine upon the whole evidence on this point whether the defendants have shown you satisfactorily that either Douglas or Chittenden antedated this invention. If they have not satisfied you, then the plaintiffs are entitled to a verdict on this patent. But if you are satisfied that the Arnolds were not the first inventors of the separator, and you are satisfied that George B. Arnold was the first inventor of the magic ruffle, the plaintiffs will still be entitled to a verdict.

The only remaining question is that of damages. The rule and amount of damages in this case must be the same whether you find for the plaintiffs on one or both of the patents (separator and ruffle patents), and that is, the damage actually sustained by the plaintiffs. It is generally somewhat difficult to ascertain precisely how much the owner of a patent has been damaged by the infringement of another, and I shall endeavor to simplify the inquiry in this case at some risk of doing injustice to the plaintiffs. The jury will have as a basis to start upon, the quantity sold by the defendants according to their own admission, 1,244 boxes; and they will inquire whether or not they are satisfied that the plaintiffs were prevented from selling that number of boxes by those sales of the defendants. If they were, then the plaintiffs have a right to recover the amount of profits of which they were deprived by the defendants' sales. They insist they were thus deprived of selling these 1,244 boxes, and that the profits which they thus lost were equivalent to $2$^{15}/_{100}$ per box. The jury must decide. If they lost, in round numbers, $2 per box in 1,244 boxes, this would give them the right to recover $2,488. But the plaintiffs claim that from the whole evidence the jury ought to find that the defendants made larger sales, and thus damaged the plaintiffs in a still larger amount. The jury are to determine this; but they should proceed with caution in this part of the case, and give no more damages than they think the proof warrants them in concluding that the plaintiffs have actually sustained.

This is an important case to the parties, but requires for its proper disposition only unbending impartiality and straightforward good sense. Every person may be compelled, at some time in his life, to struggle in a court of justice for his rights, and no higher felicity attends human action than that which flows from the upright and just discharge of the duty of triers.

Mr. Gifford: I deem it my duty to call the attention of the court to two points. One is a point in which I think the court has overlooked the evidence. Mr. Chittenden made ruffling upon the machine in the presence of the jury. That was intended as a specimen of the ruffle he made upon the same kind of machine in the summer of 1859.

The other point respects the construction of the ruffle patent. I ask your honor to charge the jury that the claim of the ruffle patent is not limited to regularity of plaits in the ruffle produced, but includes ruffles with irregular as well as regular plaits. And further, I will ask your honor to charge that the gathering thread in the old ruffle was only a means of making the article, and when made and taken out formed no part of the manufactured article.

THE COURT: I called it a "useless thread."

Gentlemen (to the jury): The counsel for the defendants has called my attention to that portion of my remarks in which I stated that it might be difficult from the evidence to determine how the ruffle was made by Mr. Chittenden; and he has called my attention to the fact, that Mr. Chittenden has experimented upon the machine here. That you are to take into consideration, as it appears in the evidence, to show what the character of the ruffling was. I call your attention, therefore, to that fact in connection with the remarks I have already made.

[For other cases involving this patent, see Magic Ruffle Co. v. Elm City Co., Cases Nos. 8,949 and 8,950.]