SIMPLEX LITHOGRAPH CO. v. RENFREW MFG. CO. et al.

(Circuit Court of Appeals, Second Circuit. February 9, 1915.)

No. 173.

PATENTS 328—VALIDITY AND INFRINGEMENT—SAMPLE CARD.
    The Stentz patent, No. 1,047,849, for a sample card for displaying samples in the similitude of textile fabrics, *held* valid, but not infringed, on the showing made for a preliminary injunction.

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here on appeal from an order for preliminary injunction entered in the District Court, Southern District of New York, in a suit for infringement of patent No. 1,047,849, issued December 17, 1912, to B. F. Stentz, for an improved sample card.

C. P. Goepel, of New York City, for appellants.

Munn & Munn, of New York City (T. Hart Anderson, of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. Stating the object of invention the patentee says:

    "It is now customary in displaying textile fabrics to cut up material into pieces and attach them to a card or 'mount,' and this practice entails a large expense, not only for the material which is cut up into samples, but also for the labor incident to the cutting of the material and the attaching of the samples to the cards, and it is with the object of producing a sample card which shall accurately display samples of textile fabrics without the necessity of employing samples actually cut from the goods that the present invention was produced."

The sample card described is of any suitable material, preferably cardboard of sufficient thickness and stiffness to maintain its shape in handling and yet sufficiently thin to receive embossed impressions. Upon one face of this material a panel is raised by an embossing process, said panel upon its face representing accurately the pattern and weave of the textile fabric which it is intended to represent. The colors which appear in the fabric may be shown by printing them on the panels. By this improved sample card the patentee states that he almost entirely does away with the practice of cutting up textile materials and attaching them to cards, which has long been the practice for pro-

ducing sample cards of this nature, and at a great saving of time and material.

The claims are:

"1. A sample card for displaying samples in the similitude of textile fabrics, comprising a body portion and an embossed panel struck up from said body portion, having a surface forming a replica of a sample of textile material."

"2. A sample card for displaying samples in the similitude of textile fabrics, comprising a body portion and an embossed panel struck up from said body portion, having a surface forming a replica of a sample of textile material and sharply defined edges raised above the body portion a distance substantially equaling the thickness of a sample of textile material.

"3. A sample card for displaying samples in the similitude of textile fabrics, comprising a body portion and an embossed panel struck up from said body portion, forming a replica of a sample of textile material, and a sample of textile material attached to said sample card.

"4. A sample card for displaying samples in the similitude of textile fabrics, comprising a body portion and a plurality of embossed panels struck up therefrom, representing replicas of samples of textile material differing in pattern from each other, and arranged symmetrically with relation to each other.

"5. A sample card for displaying a sample in the similitude of textile fabric, having struck up thereon a replica of a sample of the textile material to be displayed.

"6. A sample card for displaying a sample in the similitude of a textile fabric, said card having a surface corresponding to the characteristic weave of the pattern of the fabric, and being colored in correspondence with the color and design of the fabric."

The specifications are very plain and explicit; they point out clearly what the patented improvement is. The sample card of the patent is one in which the panels representing the samples of the various fabrics, or at least parts of such panels, are raised, struck up, or embossed, so that each panel presents "a replica of a piece of goods," showing not only the pattern, but also the weave of the fabric. Thus we find the phrases "raised by an embossing process," panels having "sharply defined marginal edges," "edges raised above the body portion a distance substantially equal to the thickness of a piece of textile fabric." The drawings, especially Figure 2, show the same thing. Witnesses for complainant, in describing the sample cards, say that "the effect is as though samples of cloth had been pasted on"; that sometimes "persons mistook the embossing for actual samples of goods," and "tried to lift them"; that they showed "exactly the weave."

Claims 1, 2, 3, and 4 include as an element the "embossed" panel. Claim 5 states that the replica of the sample of textile fabric is "struck up." We should suppose that a surface with a panel "struck up" is one with a panel "embossed," but there may be some other way of striking up. This claim would cover a panel of the sort described in the specifications, whether it were raised by embossing or by striking up in some other way; but the raised panel is an element, however produced. Claim 6 covers a card in which the pattern or design of the fabric is shown by colors, and the "characteristic weave" of the pattern is shown by having "a surface corresponding thereto." No way of producing such a surface is shown or indicated in the patent, except by embossing or striking up portions of the body of the card. Possibly a similar surface might be produced by moulding onto the top surface

of the card a replica of the characteristic weave. All the claims include as an element the "embossed" panel or panel showing the *weave* of the fabric, otherwise than merely by depicting it in colors flatly on a flat surface.

On the record it seems to us that the trial court properly held that the patent, as thus construed, was valid. Nothing like it is shown, in the record here presented, as prior art. In the single exhibit produced as the sole sample of defendant's device, the pattern or design is shown by colors, but the "characteristic weave" of the fabric is not shown in the way indicated in the patent, by embossing or striking up "panels" or other portions of the surface of the card. The entire surface of the finished article is flat; there are no corrugations of any sort to · indicate weave. Surely no one looking at it would believe that he was looking at natural pieces of cloth mounted on the cards.

Complainant's expert testified that in Exhibit B (defendant's card) he finds the structure called for in claim 6. But the context shows that he means claim 6 as he construes it. As we construe it differently, we reach a different conclusion as to infringement. It is true that the second assignment of error is to holding infringement of 1, 2, 3, 4, and 5 (not including 6); but assignment No. 3 is generally to the refusal to deny motion for preliminary injunction, which is broad enough.

There seems to be some understanding by the expert witnesses that defendant's cards are produced by a process of "embossing"; that the way in which colors, paper, and tools are placed and pressed together is embossing, although the result is a flat surface, presenting a different appearance to the eye than does the surface of plaintiff's cards. We are satisfied, however, that the "embossing" of the patent is an "embossing" which produces the effect which the patent describes and claims. It is the product, not the process, which is patented, and a process, whether it be *called* embossing or not, which does not result in that product, does not produce an infringement of these six claims.

The order is reversed.