SCOTT & WILLIAMS, Inc., v. ARISTO HOSIERY CO., Inc.

(District Court, S. D. New York.  May 4, 1920.)

1. Patents ⬡═313—Invalidity must be clear on face of patent to warrant dismissal.

   A motion to dismiss a bill for infringement on the ground that the patent is void on its face, if really arguable, must be denied.

2. Patents ⬡═328—No. 1,233,714, for stockings, not void on its face.

   The Scott patent, No. 1,233,714, for a seamless knit stocking having a structural variation of the knit fabric at the back resembling a seam in appearance, held not void on its face, either for want of invention or utility or for deception.

3. Patents ⬡═123—For imitation construction not necessarily invalid as deceptive.

   Where a patentee contributes a new construction, whereby an imitation is made, it cannot be presumed that the purpose of the imitation is to deceive, and indeed an imitation may be of great utility.

In Equity.  Suit by Scott & Williams, Incorporated, against the Aristo Hosiery Company, Incorporated.  On motion to dismiss bill.  Denied.

Emery, Booth, Janney & Varney, of Boston, Mass. (F. L. Emery, of Boston, Mass., of counsel), for the motion.

Howson & Howson, of New York City (Charles Neave and Hubert Howson, both of New York City, of counsel), opposed.

MAYER, District Judge.  The motion is to dismiss the bill on the ground that the patent (No. 1,233,714, granted to Scott on July 17, 1917) is void on its face.  It is contended that the patent is void (1) for want of invention; (2) for lack of utility; (3) because deceptive on its face.

The specification reads in part:

"My invention relates to circular knit or seamless stockings having therein an imitation of some of the characteristic appearances of straight or flat-fashioned and seamed stockings.  The improvements of recent years in the manufacture of circular knit seamless stockings have made them desirable articles of wear, but there still exists in the minds of some conservative purchasers a habit of choice in favor of the type of stocking having a seam at the back of the leg, whch prejudice is not based upon any present advantage or merit in the seamed stockings, however great such advantage may have been at past times.  Unthinking purchasers still depend upon superficial characteristics of the once superior sort of stocking to indicate to them a desirable article of purchase, without examining the stocking for the other structural features upon which a more intelligent choice might be based.  Such persons usually prefer, when they can be induced to make a decision on their respective merits, that type of stocking having no seam at the back, which has manifest advantages as an article of wear.  The existence of a large body of prejudice of this sort in the minds of the public unfairly militates against the sale of circular knit articles of hosiery.  One purpose of my present invention is to provide in such hosiery an imitation of the superficial appearance of the stockings of the other type, so that circular knit stockings made according to my invention will not be unfairly associated in the minds of such purchasers with a crude and inferior class of goods, but may be taken upon their relative merit as garments.  One of the appearances, the absence of which leads the uninformed public to believe the stocking is an inferior stocking, is a mark at the

back of the leg incidental to making on a flat-fashioning or straight machine, caused by the transfer of loops of one wale to loops of an adjacent wale. In the usual article these marks occur at the back of the leg above the ankle, on either side of the seam marking the back central line of the stocking. When finished for sale, such full-fashioned stockings are folded on the line of the seam, and the mark of these transfers is conspicuous and distinctive."

The claims are:

"1. A seamless stocking having therein at the back of the leg a structural variation of the knit fabric of which it is composed, imitating the narrowing marks occurring in seamed or other narrowed stockings.

"2. A seamless stocking having a tapered leg having the same number of needle wales therein throughout and separated structural marks occurring in the same needle wale on each side of and near the central back line of the stocking at the tapered portion only thereof.

"3. A seamless stocking having a tapered leg, a mock seam at the back of the leg, and separated marks imitating transferred narrowings at either side of the mock steam in said tapered portion.

"4. A seamless stocking having a tapered leg and tuck-stitch marks separated in the direction of the length of the stocking occurring in the same needle wale on each side of the central back line of the stocking at the tapered portion."

1. Want of Invention.

[1] A motion to dismiss on the face of letters patent is very much like a motion at law to dispose of a pleading because frivolous. If the motion is really arguable, it must be denied. In Mallinson v. Ryan (D. C.) 242 Fed. 951, the mere inspection of a design patent was all that was necessary. See, however, Bayley & Sons, Inc., v. Blumberg, 254 Fed. 696, 166 C. C. A. 194.

[2] The specification here sets forth, inter alia:

"At the back of the leg, and at the location of this taper, and preferably in the same needle wales, 4, lying a fixed distance from and on each side of the central back needle wale, 5, on which the stocking is folded when finished and ready for sale, I form during manufacture marks, 6, preferably separated as shown, of a different texture from the remainder of the fabric, as made, for instance, by transferring loops from one needle wale to an adjacent needle wale, or by making a drawstitch or group of drawstitches, or by a tuck stitch extending over two or more courses. I prefer the latter structure, which is illustrated in Fig. 2, etc. (lines 80–94)."

The foregoing talks of structure in terms of art, and therefore, whether claim 1, which refers to a "structural variation of the knit fabric," sets forth a claimed invention is a question of fact. Whether the patent is or is not for an aggregation cannot be surely gathered from the face of the patent itself. Beer v. Walbridge, 100 Fed. 465, 40 C. C. A. 496; Stillwell v. McPherson, 183 Fed. 586, 106 C. C. A. 354; Kimball v. Noesting, 262 Fed. 148, —— C. C. A. ——.

2. Want of Utility.

The bill of complaint alleges (1) extensive use; and (2) that defendant has "made, used, and sold the improvements described in and claimed in said letters patent." Further, it might well be that the seamless stocking here concerned is useful, both from the standpoint of economy in manufacture and comfort and convenience to the wearer. See, also, Magic Ruffle Co. Case, 2 Fish. Pat. Cas. 330, Fed. Cas. No. 8,948.

3. Deception.

[3] This point is linked to some extent with point 2, supra. Defendant's counsel have quite aptly contended that the patent discloses, not a mere imitation, but a new construction, whereby an imitation is made. A careful reading of the specification shows that one of the important objects sought to be attained is that—

"Circular knit stockings made according to my invention will not be * · * associated * * * with a crude and inferior class of goods, *but may be taken on their relative merits.*" (Italics mine.)

It cannot be assumed that the dealer will palm off the goods as having a seam when they are seamless. The argument, colloquially stated, must be assumed to be.

"Here is a seamless stocking, with an imitation of the seam to which you have been accustomed; but, from the standpoint of material, make, and wear, it is as good or better than the stocking with a seam."

If the dealer deceives by statement, or by some tricky method of sale, then he who is injured may have a cause of action. But where a patentee contributes a new construction, whereby an imitation is made, it cannot be presumed, at the threshold, that the purpose of the imitation is to deceive. Indeed, imitations may prove of great utility. They may serve the public just as acceptably and effectively as the real article at less cost.

A striking illustration is Oriental Tissue Co. v. Dejonge, 218 Fed. 170–173, 134 C. C. A. 50. No one is concerned if the gold leaf effect on the cover of a law book is accomplished by imitation gold leaf instead of real gold leaf. So, also, in Simplex v. Renfrew, 221 Fed. 637, 137 C. C. A. 361; Id., 250 Fed. 863, 163 C. C. A. 177, where the ingenious inventor devised a sample card which effectuated a substantial saving over the old sample method of "swatches" of goods. See, also, Denton v. Fulda, 225 Fed. 537, 140 C. C. A. 521; Proctor & Gamble v. Berlin, 256 Fed. 23, 167 C. C. A. 295.

I have not overlooked Rickard v. Du Bon, 103 Fed. 868, 43 C. C. A. 360, which, it seems to me, is quite distinguishable from the case at bar.

The motion is denied, with leave to defendant to answer within 20 days.