## PHILADELPHIA RUBBER WORKS CO. v. UNITED STATES RUBBER RECLAIMING WORKS.

(District Court, W. D. New York. June 29, 1915.)

1. PATENTS ⬤⟶328—VALIDITY AND INFRINGEMENT—PROCESS FOR DEVULCANIZING RUBBER WASTE.

The Marks patent, No. 635,141, for a process for devulcanizing rubber waste, was not anticipated, discloses invention, and describes the process claimed with sufficient definiteness; also *held* infringed.

2. PATENTS ⬤⟶312—INFRINGEMENT—EVIDENCE.

A defendant is not excused from giving testimony to negative infringement of a patented process by reason of its desire to keep its process a business secret, since it can at least show by affirmative proof what steps of the patented process it does not use.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 544–549; Dec. Dig. ⬤⟶312.]

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. PATENTS ☜175—CONSTRUCTION OF CLAIM—"MORE OR LESS."
    In a patent claim, describing a process for devulcanizing rubber waste
by heating to a temperature of 344° Fahrenheit, more or less, and for
maintaining such temperature for 20 hours, more or less, the words
"more or less" mean approximately or nearly such temperature or length
of time, leaving a reasonable margin to the discretion or judgment of the
one practicing the process.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 250, 250⅔; Dec.
Dig. ☜175.
    For other definitions, see Words and Phrases, First and Second Series,
More or Less.]

In Equity. Suit by the Philadelphia Rubber Works Company against
the United States Rubber Reclaiming Works. On final hearing. De-
cree for complainant.

Charles Neave, of New York City (Alan N. Mann, of New York
City, of counsel), for complainant.

Briesen & Knauth, of New York City (Arthur v. Briesen and Fritz
Ziegler, Jr., both of New York City, and Simon Fleischmann, of Buf-
falo, N. Y., of counsel), for defendant.

HAZEL, District judge. Bill for injunction and accounting, al-
leging infringement of patent No. 635,141, dated October 17, 1899, to
Arthur H. Marks, complainant's assignor, for a process for reclaiming
rubber from vulcanized rubber waste. The patent plainly states as
an essential of the process a dilute alkaline solution, preferably a 3
per cent. solution of caustic soda, sufficient to completely submerge the
finely ground rubber in a sealed vessel, which, when subjected to great
heat, say "from 344° to 370° Fahrenheit, more or less," for 20 hours,
more or less, will devulcanize vulcanized rubber waste and remove
therefrom any fibrous substance. The object of the invention was to
reclaim rubber in vulcanized rubber waste for re-use, by imparting
to it the substantial characteristics of fresh or new rubber. The single
claim of the patent reads as follows:

"The described process for devulcanizing rubber waste, which consists in
submerging the finely ground rubber waste in a dilute alkaline solution in a
sealed vessel, in heating the contents of the vessel to a temperature of 344°
Fahrenheit, more or less, substantially as specified, and in maintaining said
temperature for twenty hours, more or less, substantially as specified."

[1] The principal defenses are noninfringement, anticipation, and
insufficiency or indefiniteness of description. A determination of the
adequacy of the last-mentioned defense requires an examination of the
specification, with a view to ascertaining whether it could be under-
stood by the skilled in the art and the process practiced from such
description. Diamond Rubber Co. v. Consolidated Tire Co., 220 U.
S. 428, 31 Sup. Ct. 444, 55 L. Ed. 527.

The patentee states therein that in the best method known to him
for carrying out the process the finely ground rubber waste is put in
a sealed vessel, contained in a tightly closed larger vessel, and sub-
merged in an alkaline solution, for example, a 3 per cent. solution of
caustic soda, and subjected to great heat, say a temperature of be-

tween 344° and 370° Fahrenheit, more or less, the pressure being maintained for 20 hours, more or less. Any lack of specificness arising from the difference in temperature, and from the use of the terms "submerged," "finely ground rubber waste," "dilute alkaline solution," and "sealed vessel," is not of such a nature as to mislead the skilled in the art as to the method of practicing the process. It is presumable that the words "finely ground" included waste cut into small pieces, and that the submerging solution should vary somewhat in strength and temperature according to the character of the waste material treated.

[3] It is difficult to specify with exactness the strength of a solution, or the degree of temperature, or length of time required for obtaining the best results under varying conditions, and therefore the words "more or less," found in the claim in connection with the degree of temperature and the length of time required, must be interpreted as meaning approximately or nearly such temperature or length of time, leaving a reasonable margin to the discretion or judgment of the one practicing the process. The law is that the admixing of certain substances or the heating of certain substances to a fixed temperature is a process; and in Tilghman v. Proctor, 102 U. S. 707, 26 L. Ed. 279, it is said that, if the method of doing this or the apparatus in or by which it can be done is fairly obvious, suggesting itself to a person skilled in the particular art, it is enough if the patent specifies the process to be accomplished, without giving supererogatory directions as to the apparatus or method employed. See, also, Expanded Metal Co. v. Bradford, 214 U. S. 366, 29 Sup. Ct. 652, 56 L. Ed. 1034. It was also contended that the process was inoperative, because the desired temperature could not be obtained within the inner vessel to achieve devulcanization without applying a stirring apparatus, etc.; but I think there is abundant evidence to the contrary.

According to the proofs, crude rubber in its original state is dense, and, though capable of being stretched, it is nevertheless inelastic; the property of elasticity being imparted to it by the well-known Goodyear process, which combines with the rubber, while in a plastic state, a small proportion of sulphur, which vulcanizes or hardens it, so that it is able to retain its form regardless of variations in temperature. It was testified that in practice, only a portion of the sulphur added to the rubber chemically combines with it during vulcanization, the remainder being classed as free sulphur, and that when rubber articles are depreciated by wear or use the rubber contained therein is reclaimed and restored to a plastic state for revulcanization by the process of devulcanization. Devulcanization removes the free sulphur, or a portion thereof, from the vulcanized rubber, and is attended by a distinct depolymerization, or breaking into smaller aggregations the rubber molecules, which consist of hydrogen and carbon in the proportion of $C_5 H_8$, thus rendering the waste rubber plastic.

Defendant's counsel questioned the practicability of the depolymerization of the waste rubber, contending that the problem was merely theoretical and had originated in the minds of complainant's expert witnesses; but their testimony on this point is uncontroverted and indicates that during vulcanization there is not only a chemical combination of the rubber and sulphur, but that the reaction of the composi-

tion increases the degree of polymerization of the rubber molecules, a phenomenon present when a given substance takes on larger quantities of the same components. That this results from vulcanizing rubber finds support in various publications to which the witness Weber referred, and in the experiments carried on by him with caustic soda as a solvent, for the purpose of proving that the Marks process in question not only removed the free sulphur and fabric, but also broke into smaller aggregations the molecules of rubber. That the term "devulcanization" implies a change in the state of cohesion of the molecules, as distinguished from mere elimination of the free sulphur, is shown in the Beer patent, No. 12,983, of 1855.

There are a number of patents in the record which clearly describe means for devulcanizing rubber articles, such as boots and shoes, in order to reclaim the rubber for re-use, and in all such patents high temperature was applied to the rubber, both water and steam being used. In the Mitchell patent, No. 395,987, a caustic solution was used as a reclaiming agent, but the caustic solution was washed out before the rubber was subjected to great heat. Had it been allowed to remain in until after the heat was applied, devulcanization within the provisions of complainant's patent would probably have resulted. The alkaline solution in prior patents for reclaiming waste rubber was simply used to remove the free sulphur or fabric, and not to effect devulcanization. It was not suggested in the Mitchell patent, to which further reference will hereinafter be made, that old rubber tires or hose could be efficiently devulcanized and the free sulphur and fabric removed therefrom by a single step. If Mitchell had devised such a process, then obviously he would have succeeded in accomplishing what the patentee herein has accomplished. His process defiberized rubber waste by the use of acid and pressure, and then devulcanized it by an additional step, after washing out the caustic soda, which he believed to be harmful during the period of devulcanization.

The evidence preponderatingly shows that vulcanized rubber tires could not be rendered completely plastic by merely removing the free sulphur and fabric, and that such condition was attainable only by depolymerizing the waste or breaking down the rubber molecules formed during vulcanization. Prior to the Marks process under consideration, so-called mechanical scrap rubber which had necessarily been highly vulcanized was not efficiently devulcanized or reclaimed by the acid process familiar to the art. Indeed, the witness Lowman swore that the shoddy made from mechanical scrap by the acid process was of a lower grade than rubber reclaimed from boot and shoe scrap. The experiments by the witness Weber showed that caustic soda aided devulcanization and increased the tensile strength of reclaimed rubber. It is not claimed that the invention in suit restores to waste rubber the superior characteristics of fresh rubber; but it is maintained, and I think has been proven, that after the waste rubber has been treated by the specified process it is capable of extensive use for mercantile purposes.

The patent in suit is not anticipated by anything shown in the prior art. In the Beer patent, No. 12,983, to which importance is attached,

the ground rubber is first boiled in an alkaline solution, and then boiled again after turpentine has been added, this process continuing until the waste is desulphurized; but what degree of heat or what length of time is required is not specified. After the waste is freed from sulphur, it is washed and dried, and only then is it prepared for devulcanization. This method is manifestly not the method with which we are herein concerned, the important feature of which is the simultaneous desulphurization and devulcanization of rubber waste by the use of caustic soda.

The Mitchell patent, No. 395,987, to which reference has hereinbefore been made, comes nearer than any other to suggesting the process in controversy, but the method therein described was not sufficiently extended to include what Marks accomplished. By Mitchell's process waste rubber was reclaimed by immersing it in an acid solution in a sealed vessel and subjecting it to pressure above the boiling point, in fact, 240° Fahrenheit, until the material is corroded and removable by washing, after which the waste is steamed at high pressure to effect devulcanization. Marks, on the other hand, defiberized, desulphurized, and devulcanized waste rubber by a single operation, and in so doing achieved a different result from Mitchell, a result that was beneficial and useful.

It is shown that the mere presence of caustic soda in rubber waste acts as a catalyzer, and will not only operate to stiffen rubber, but, if heated to a high temperature, will produce greater plasticity in the waste. I think the patentee made a patentable discovery, and that its usefulness may be clearly inferred from defendant's adaptation thereof. Other alleged anticipations need not be examined, as those herein specified are the ones principally relied upon.

It was next contended that Marks was not in fact the inventor of the process in question, and that it was invented by one Price. It appears, however, that the patentee, Sweet, and Price, who were employés of the Boston Woven Hose Company, together made laboratory experiments from which it was seen that a caustic soda solution at great heat had a tendency to soften rubber; but it is not proven that Marks did not alone afterwards develope and complete the process when experiments had been abandoned by Sweet and Price. Certainly the record does not disclose that either Price or Sweet conceived that the entire process of reclamation could be performed at one time, by putting the waste in dilute alkaline solution and subjecting it to the high temperature specified in the patent, thus devulcanizing the waste and incidentally removing the fabric therefrom. Marks completed the laboratory experiments, and is therefore entitled to the patent, even though others may have had the same idea and made some experiments along the same line. Agawam v. Jordan, 7 Wall. 583, 19 L. Ed. 177.

As to infringement: It is fairly shown that defendant, in its adaptation for reclaiming rubber waste, uses caustic soda of varying strength, from 5 per cent. to 9 per cent., placing it in a sealed vessel, an iron cylinder, in which the waste, cut into small pieces capable of passing through a sieve of ⅜-inch mesh, is immersed. Steam is then injected into the outer vessel in the space surrounding the vulcanizer at a

temperature of 360° Fahrenheit, and such temperature maintained for a period of from 20 to 24 hours. The caustic solution used by the defendant is no doubt a dilute solution within the reasonable intendment of the patent in suit, and the cut waste the equivalent of the finely ground waste therein specified; and the defendant's waste is thus restored to a plastic condition suitable for revulcanization, in practically the same way as specified in the claim in suit.

[2] It was urged that infringement was not sufficiently proven, but there is no contradiction of the prima facie showing of complainant in relation thereto. Evidence to controvert infringement could easily have been produced by defendant, if the testimony of Butz had not been reliable, and the failure of the defendant to deny or qualify such testimony is indicative of its truthfulness. A. B. Dick Co. v. Belke & Wagner Co. (C. C.) 86 Fed. 149. The defendant is not excused from giving negative testimony by reason of its desire to keep its process a business secret, for in such case, as said by Judge Lacombe in Badische Anilin & Soda Fabrik v. S. Klipstein & Co. et al. (C. C.) 125 Fed. 543:

"A court might not compel them to divulge it, but they could at least show by affirmative proof that some one or more steps (or all the steps) of the processes set forth in the patent had not been followed in the manufacture of the product."

Since the hearing my attention has been directed to a decision rendered by Judge Clarke in the Northern District of Ohio, Eastern Division, wherein he held the patent in suit invalid for want of novelty and invention; but, though I have carefully considered the subject-matter of the patent in connection with the opinion of the learned court, I am persuaded on the record before me to a different conclusion. The patent in suit in my opinion was a step forward in the art, not a great step, it is true, but nevertheless an advance, which has the merit of accomplishing a new result by the application of a new process to the reclamation of rubber waste; and as the defendant appropriated the essential elements thereof, thereby achieving the same result, it must be held to have unlawfully appropriated the same.

Decree for complainant, with costs.