## A. B. DICK CO. v. UNDERWOOD TYPEWRITER CO. (two cases).

### (District Court, S. D. New York. June 9, 1916.)

1. PATENTS ☜══292—SUITS FOR INFRINGEMENT—INTERROGATORIES.

   In a suit for infringement of patents for an article made by a chemical process, and the process of making the same, interrogatories by complainant should not be in the language of the claims, which use terms the meaning of which may be open to dispute; but defendant may be required to produce a true sample of its manufacture, and to state in accurate detail the process employed.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 446; Dec. Dig. ☜══292.]

2. PATENTS ☜══292—SUITS FOR INFRINGEMENT—INTERROGATORIES.

   In such a suit, an interrogatory requiring defendant to state whether it made, used, or sold an article like that "illustrated" by one attached to the interrogatory is objectionable, as indefinite.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 446; Dec. Dig. ☜══292.]

3. PATENTS ☜══292—SUITS FOR INFRINGEMENT—INTERROGATORIES.

   In infringement suits, interrogatories by complainant should not ordinarily be in the language of the claims of the patent, which may call for their construction by defendant, nor should a defendant be required to state the names of experts or others from whom the information for his answers is obtained.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 446; Dec. Dig. ☜══292.]

4. PLEADING ☜══323(1)—SUITS FOR INFRINGEMENT OF PATENT—BILL OF PARTICULARS—EXCHANGE OF DATES.

   In an infringement suit, where anticipation is pleaded, complainant is entitled on demand to a bill of particulars stating the prior patents or publications, or prior use, proof of which will be offered and relied upon by defendant; but complainant must at the time of demanding such bill of particulars serve on defendant a statement of the approximate date of invention as claimed by him.

   [Ed. Note.—For other cases, see Pleading, Cent. Dig. § 976; Dec. Dig. ☜══323(1).]

In Equity. Suits by the A. B. Dick Company against the Underwood Typewriter Company. On objections to interrogatories and motions for bills of particulars.

Samuel O. Edmonds, of New York City, for plaintiff.
Hans von Briesen, of New York City, for defendant.

MAYER, District Judge. There are two cases, both the usual patent infringement suits. The main case is based upon four patents relating to the art of stencil duplication. Two of these patents cover the so-called "Dermatype" stencil sheet, while the other two cover, respectively, methods of preparing and using stencil sheets. The second case is based upon a patent relating to a moistening solution for use on a stencil sheet such as covered by the patents in the main case.

### Case No. 1 (Involving Four Patents)—Interrogatories.

There are in all 56 claims and 87 interrogatories. The answer, after setting up elaborate schedules of prior patents, etc., alleges that, prior to the issuance of the patents in suit, the defendant "purchased stencil

paper and afterwards sold the same," and that in or before June, 1915, it commenced to make and sell stencil paper "like the sheet marked 'Schedule A' hereto annexed, which it now is and has since July 15th been exclusively making and selling." Thus defendant's alleged infringing acts seem to be: First, the sale of stencil paper purchased from another; and, second, the sale of stencil paper made by itself.

There are annexed to the plaintiff's interrogatories two stencil sheets, one (Schedule 1) believed by plaintiff to illustrate the stencil paper first referred to, and the other (Schedule 2) believed to represent the stencil paper last referred to. Schedule 4 annexed to the interrogatories is believed by plaintiff to be the same as Schedule A which defendant has annexed to its answer. The interrogatories are "for the discovery * * * of facts * * * material to the support * * * of the cause"; these facts being, mainly, those immediately concerned in the charge that the defendant has infringed the plaintiff's patents.

### Interrogatories 21 to 76, Inclusive.

[1] Interrogatory No. 21 is typical of this group. It reads:

"21. Did the defendant make, use, or sell a stencil blank capable of being stencilized, consisting of a dry, but hygroscopic, sheet of fibrous material impregnated with a coagulated colloidal substance?"

This is precisely the language of claim 1 of patent No. 1,101,268. The remaining interrogatories are in the language of the claims. This interrogatory 21 is one of the simplest of the group. An example of the more elaborate interrogatories and claims is No. 32 as follows:

"32. Did the defendant make, use, or sell a stencil blank capable of being stencilized by pressure, consisting of a sheet of fibrous material impregnated with protein coagulated by a chromic coagulating agent and softened by a suitable tempering agent, whereby the same is rendered hygroscopic?"

Plaintiff contends that the various chemical terms used are simple and can be readily answered. Defendant insists that the interrogatories and claims refer to intricate chemical reactions.

In a case like this I think interrogatories in the language of the claims are objectionable. There may well be a difference of opinion, for instance, as to what is a "fibrous material," whether a sheet is "impregnated," whether the substance is "colloidal."

In Oriental Tissue Co. v. De Jonge & Co., 218 Fed. 170, 134 C. C. A. 50, and in a later case between the same parties (235 Fed. 294), there was a sharp controversy as to the meaning of "soluble cotton," and my experience in that case convinced me that, generally speaking, chemical cases cannot be compared in this regard to simple mechanical cases, where, for instance, a "steel rod" must be a steel rod.

Defendant has annexed to its answer a sheet of the stencil paper made by it, and that ordinarily would be enough. As it appears, however, from the argument of both counsel that, because the sheet is hygroscopic, it may be subject to changes, defendant should arrange to give plaintiff, immediately when manufactured, a sufficient number of sheets to enable plaintiff's experts to make a prompt analysis. If

any practical difficulties in this regard further appear, plaintiff. may move again for appropriate relief before or at the trial.

Another objection to this class of interrogatory is that in effect it may call for a construction of the claims contrary to the practice in this district. District Court rule 7.

### Interrogatories 1–20.

[2] Interrogatory No. 1 is typical. It reads:

"1. Did the defendant, in this district and between June 23, 1914, and January 4, 1916, make or use or sell (if yea, which) stencil paper illustrated by the sheet hereto annexed and marked 'Schedule 1'?"

The objection is that the interrogatory refers to stencil paper "illustrated" by the sheet marked "Schedule 1." I think this objection is not captious, because the subject-matter of the specification and claims deals with much specific detail, and therefore in this case the word "illustrated" may be indefinite. This group of interrogatories, however, is practically disposed of by the suggested arrangement, supra, of furnishing plaintiff with fresh samples of the alleged infringing sheets.

### Interrogatories 77–82, Inclusive.

Interrogatory 77 reads:

"77. What is the description and commercial designation of the filler employed in the coating compound of defendant's stencil paper as illustrated (a) by Schedule 1; (b) by Schedule 4; (c) by Schedule A, above referred to; and from whom (give address) did the defendant obtain the same?"

This group is objectionable because of the use of the word "illustrated." In other respects, these interrogatories are proper. When, therefore, defendant furnishes plaintiff with the samples as I have already indicated, plaintiff may propound questions like:

"What is the description and commercial designation of the filler employed in the coating compound of defendant's stencil paper (Exhibit ——) and from whom (give address) did the defendant obtain the same?"

### Interrogatory 83.

Interrogatory 83 reads:

"83. When the defendant undertook the manufacture of its own stencil paper in July, 1915, as set forth in section VIII of the answer to the bill of complaint, what, in the stencil paper first produced commercially, were (a) the character, description, and trade designation of the base employed; (b) the ingredients (and proportions thereof) of the coating compound and the order in which they were combined; (c) the apparatus or appliances employed; and (d) the conditions and processes involved in preparing the coating compound and in applying the same to the base?"

Defendant's counsel states that "defendant is willing to supply a general answer," but should not be required to state the details called for. I think that the details are precisely what plaintiff is entitled to, and this objection is not sustained.

### Interrogatory 84.

"84. Thereafter, and prior to January 4, 1916, were any changes made with respect to the matters or things covered by the last preceding interrogatory; and, if yea, what were they?"

Objection overruled.

### Interrogatories 85 and 86.

"85. Did the stencil paper sold by the defendant, as stated in section VIII of the answer to the bill, differ in any respect (and, if so, in what) from the stencil paper which it had on sale in this district, and sold, on September 16, 1915? Also state whether any differences between such papers, stated in answer to this interrogatory, are the only differences between them known to the defendant, with respect (a) to the stencil papers themselves; (b) to the processes involved in their production; and (c) to the intended processes of using them for the production of multiple copies?

"86. Did the stencil paper sold by the defendant, as stated in section VIII of the answer to the bill, differ in any respect (and, if so, in what) from the stencil paper which it had on sale in this district, and sold, on April 8, 1916? Also state whether any differences between such papers, stated in answer to this interrogatory, are the only differences between them known to the defendant, with respect (a) to the stencil papers themselves; (b) to the processes involved in their production, and (c) to the intended processes of using them for the production of multiple copies?"

I do not find any objection to the general tenor of these questions, but there is no explanation of the specific dates of September 16, 1915, and April 8, 1915. When the selection of these dates shall have been satisfactorily explained, then the interrogatories may be propounded again.

### Interrogatory 87.

"87. Give the name or names and address or addresses of the person or persons furnishing the information upon which the answers to the foregoing interrogatories are based?"

Objection sustained.

### Case No. 2.

There are 2 claims and 13 interrogatories, Nos. 2, 7, and 8 not being objected to. No. 1 is allowed, as an aid to fix the character of the material which defendant sold subsequent to the grant of the patent sued upon. Defendant in paragraph IV of its answer distinguishes between solution which it bought prior to June, 1915, and afterwards sold, and solution which subsequent to that date it manufactured, as well as sold. In view of this differentiation, the interrogatory is proper.

Interrogatories 3, 4, and 5 are proper, for the reasons stated in connection with interrogatory 83 in case No. 1.

### Interrogatory 6.

Objection sustained as to interrogatory 6, because of use of expression "illustrated."

### Interrogatories 9, 10, and 11.

Objection sustained, because phrased in the language of the claims.

### Interrogatory 12.
Same ruling as to No. 84 of first case.

### Interrogatory 13.
Objection sustained. In this case, also, defendant should furnish a fresh sample, as indicated in case No. 1.

### Views.

[3] I have examined the cases referred to in plaintiff's brief, but an analysis of them is not necessary. The tendency of the District Court of this district is to be liberal as to interrogatories, all to the end that time and expense shall be saved to the litigants, and that when the case comes on for trial the case shall come down to the real issues as clearly and speedily as may be. In a case like this, the defendant should furnish plaintiff with a true specimen of the device alleged by plaintiff to infringe, and also state in accurate detail the process employed; but interrogatories ordinarily should not be in the language of the claims, nor should a defendant be required to state the names of his experts or others from whom the information is obtained for his answers to the interrogatories.

Guided by these rules, it will be found that the practice will be simple, and that a large number of interrogatories will not be necessary. Putting the matter colloquially, it is as if plaintiff said:

"Here is your infringing device. If you say that because of chemical changes it may not now be a true specimen, then produce your true specimen and explain in full detail how you make it."

When a defendant complies, by frankly answering such a question, such is all that plaintiff is entitled to and can fairly expect.

### Bills of Particulars.

[4] For convenience and future reference a copy of the motion paper is hereto attached, marked "A." [1]

No. 1. Granted.

No. 2. Denied, under the circumstances of this case.

No. 3. (a) Allowed, if amended:

"Approximately when, where, and with whose knowledge the alleged prior use or invention occurred."

(b) Allowed, if amended by striking out the words "and characteristics."

(c) Allowed.

(d) Denied.

No. 4. Denied. Simultaneously with the service of the bill of particulars by defendant, plaintiff must serve on defendant a statement of the dates approximately of invention as claimed by plaintiff. The recent case of De Laski, etc., Co. v. United Tire Co., 232 Fed. 884,

---

[1] See matter following end of opinion.

affirmed 235 Fed. 290, is a good illustration of the desirability of fixing the date of invention during the progress of the first litigation.

By the exchange indicated, each side will be on equal terms. By "approximately" is meant, for instance, "in or about January, 1916," instead of "on the 1st day of January, 1916." The trial judge can then determine if the proof shows, for instance, December 28, 1915, whether that is a genuine date, or is created to meet the necessities of the case.

Failure to comply will debar defendant from introducing testimony, unless otherwise allowed by the trial court. Further procedure as to adjournment in case of surprise, or the matter of the imposition of costs, is necessarily left to the trial court.

In conclusion, it may be observed that there should always be an interchange of dates. The side urging the patent should not be called upon to give the date of invention, where no request is made for the prior use date. If, under such circumstances, one side were called upon to give the date of invention, while the opposing side was not called upon for prior use dates, there might readily be instances in which this information might be misused. It is believed that the system of contemporaneous exchange will work out fairly to both sides of the litigation.

My Associates, Judges HOUGH, LEARNED HAND and AUGUSTUS N. HAND, authorize me to state that they are in accord with the conclusions expressed under the headings "Views" and "Bills of Particulars," and that the practice outlined will be followed by this court.

### "A."

1. What patents and publications will be offered in evidence at the trial of the cause to illustrate the prior state of the art, to support the contention of of anticipation, or for any other purpose, and, of those so offered, on which will defendant rely at such trial in support of the contention of anticipation of the patents in suit, or any of them, particularizing as to such latter patent or patents?

2. Of the patents and publications specified in the answer to the last preceding interrogatory, which of them will defendant contend, on the trial of this cause, refer on their face to the art of duplicating autographic or typewritten matter by means of stencils in which characters or other ink-transmitting media are formed by pressure?

3. What instance or instances of prior knowledge or use, as alleged in section XI of the answer to the bill of complaint, and what instance or instances of independent invention, as alleged in section XVI of said answer, will defendant attempt to prove on the trial of this cause, and what particular instance or instances will be relied upon by the defendant to sustain its defense or defenses (particularizing as to the description of such defense), and, with respect to each such instance, state:

(a) When, where, in whose presence, and with whose knowledge the alleged prior use or invention occurred.

(b) The description and characteristics of the thing or things invented or used, and, if stencil paper, of its base, the ingredients (and proportions thereof) of its coating compound, and the process involved or practiced in its production and use.

(c) Is there in existence any stencil paper alleged to have been made or used or invented prior to the inventions of the patents in suit, or any records, documentary or otherwise, concerning the same; and, if yea, describe the same specifically, and state when and where may the same be inspected by complainant or its counsel or designee?

235 F.—20

(d) Such other information and particulars as will enable complainant fully to investigate the facts to be' relied upon at the trial.

4. What will the defendant · contend, under section XIV of its answer, is the difference between "the alleged invention claimed" in patent in suit No. 1,101,269 and "the invention to which the inventor made oath"?

Complainant further moves that, if said bill of particulars be not delivered by the defendant to the complainant's solicitor within 10 days from the entry of order hereon, so much of defendant's answer as sets forth prior patents, publications, or names of persons or concerns having prior knowledge, or having made prior use of inventions set forth in the patents in suit, or any of them, or having independently invented the same, be stricken out, and that the defendant be debarred from taking any testimony herein relating to such prior patents, publications, knowledge, invention, or use, and for a further order that any and all costs and expense incurred by the complainant in preparing to meet proof as to the matters specified by the defendant in such bill of particulars, proof of which shall not be offered by defendant at the trial, be paid by the defendant, without reference to the final outcome of the suit.

Complainant further moves that, if the particulars of defense to be filed by the defendant pursuant to order entered hereon be incomplete or insufficient, the complainant be awarded costs against defendant, regardless of the ultimate outcome of the trial of this cause.