### ORIENTAL TISSUE CO. v. LOUIS DEJONGE & CO.

(Circuit Court of Appeals, Second Circuit. March 13, 1918.)

#### No. 174.

1. PATENTS ⊚⟳327—ACCOUNTING FOR INFRINGEMENT—CONSTRUCTION AND SCOPE OF CLAIM—SUCCESSIVE CONSTRUCTIONS.

The meaning given to a patent claim, as construed by the same court in successive suits, attaches instanter, and, if there is any difference between the construction given it in the first and in a subsequent suit, the latter must control in a pending accounting under the decree in the first suit.

2. PATENTS ⊚⟳319(2)—INFRINGEMENT—IMITATION GOLD LEAF.

On an accounting for infringement of the Gregory patent, No. 848,301, for imitation gold leaf, claim 2, complainant *held*, on the evidence, entitled to recover nominal damages only.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Oriental Tissue Company against Louis Dejonge & Co. Cross-appeals from final decree. Reversed on defendant's appeal, and complainant's appeal dismissed.

See, also, 218 Fed. 173, 134 C. C. A. 50; 234 Fed. 895, 148 C. C. A. 493; 235 Fed. 294.

Appeals from final decree, in suit on patent to Gregory, No. 848,301, modifying a master's report awarding to plaintiff the profits found to have accrued to defendants, by the sale of articles infringing claim 2 of said patent. That claim covers "a thin leaf or fabric composed entirely of soluble cotton and a coloring matter incorporated therein." Plaintiff appealed against any modification of the master's findings, and defendants from the award of anything more than nominal damages.

E. Clarkson Seward, of New York City (Wm. McK. Barber, of New York City, of counsel), for plaintiff.

E. Henry Lacombe and Seward Davis, both of New York City (Drury W. Cooper, of New York City, of counsel), for defendant.

Before ROGERS and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

HOUGH, Circuit Judge. The interlocutory decree in this particular litigation was affirmed by this court in 218 Fed. 173, 134 C. C. A. 50, after which appeal the accounting now before us proceeded. "Imitation

gold leaf," which is the subject of patent, was admittedly sold by defendants, and the infringement found by us consisted in the vending of one lot or batch of leaf, and the evidence of infringement then considered related to that special lot. Pending this accounting, the plaintiff brought another action against these defendants, based upon the sale of another and presumably different lot of leaf. The fact of such second suit is proof of plaintiff's opinion in respect of that difference. The lower court necessarily held the claim valid, but found no infringement, and we sustain decree to that effect. 234 Fed. 895, 148 C. C. A. 493.

[1] Our first judgment established in the present suit that the leaf then in evidence infringed, but it did not and could not pass upon any other; but on the accounting defendants were liable in respect of any and all leaf sold by them, to which the reasons assigned for finding infringement were fairly applicable, and those reasons were, we think, plainly stated in interpreting and construing the claim in suit. That (and any other) claim must have the same meaning at all times, but the discovery of its signification often depends upon the evidence elucidating the words, and that evidence is not always adduced in the same litigation; hence it sometimes requires more than one suit to settle the scope of a patent claim. But there can be no doubt that whether a claim, as authoritatively construed in successive rulings, seems to contract or expand, the meaning given it by authority attaches instanter, and affects all pending matters within the jurisdiction of said authority. This is the more obviously true, if the litigations are between the same parties or their privies. Hart, etc., Co. v. Railroad, etc., Co., 244 U. S. 294, 37 Sup. Ct. 506, 61 L. Ed. 1148.

If, therefore, there be any difference between the construction of claim announced in our first judgment and that given in the second, the latter must control upon this accounting. We do not, however, find any variation in our construction. The language of the patent is almost self-explanatory, and on the trial herein infringement was shown by producing a leaf sold by defendant, which plaintiff's expert swore was "composed entirely of soluble cotton and a coloring matter incorporated therein," and was therefore exactly the patentee's product as claimed; but the leaves of both parties had "a superficial gum or layer on the surface," though defendant's leaf had the greater quantity. This was also called an "extraneous" layer. Plainly, if defendant sold something "composed" of the soluble substances specified in the claim, the addition of an extraneous layer of gum might even be a good thing, but would not avoid infringement, and we so held, accepting the argument (as appears in our records) that "this adhesive (gum) forms no part of the leaf per se."

In the second suit, however, it was fully proven (1) that the materials of the patent claim as commercially procurable contained some gummy substance; and (2) that the leaves there alleged to infringe were composed not only of the materials of the claim, but of gums or resins added of a purpose, integrally mixed with the other materials, and largely exceeding in quantity the impurities of the patent ingredients as found in the market. And we accordingly agreed with the court be-

low (235 Fed. 296) that resinous matter exceeding that commercially found in soluble cotton, etc., was inconsistent with infringement.

[2] The proceedings of the master, and the supporting argument here, rest on the assertion that it was found in this (the first case that reached this court) that 3 or 4 per cent. of gums did not avoid infringement; therefore defendants must answer for all leaf as to which they do not affirmatively show a larger proportion. No such finding was made by this court; we affirm results, not reasons, and the argument now advanced overlooks what the same witness, who found that percentage, had to say as to its being an "extraneous layer," and forgets counsel's then persuasive inference, that the gummy layer (whatever its percentage of the whole) "was no part of the leaf per se."

The record before us shows fully that no substantial quantity of leaf sold by defendants had less than about three times the probable gummy impurities of commercial articles, that said gum was integrally mixed with the other components, that it had a function, and materially differentiated defendant's article from that of plaintiff, in that it was and is more or less "self sized" according to customers' wishes, while plaintiff's patented product is by definition (i. e., claim) not sized at all.

Defendant's appeal is sustained, and plaintiff's dismissed. Defendant may recover one bill of costs in this court. Cause remanded, with directions to assess nominal damages only.