### CLAUDE NEON LIGHTS, Inc., v. E. MACHLETT & SON.

District Court, E. D. New York. December 29, 1926.

On Reargument January 22, 1927.

See, also, 31 F.(2d) 988, 989.

William Bohleber, of New York City (Edwin J. Prindle, of New York City, of counsel), for plaintiff.

Darby & Darby, of New York City, for defendant.

INCH, District Judge. Objections to interrogatories in a patent suit. Plaintiff possesses a patent for a method for separating neon from gases with which it is mixed. It is a process patent relating "to a process for purifying the neon from the gases with which it is mixed." Claude patent, No. 1,191,495.

The suit is at issue. Plaintiff submits 51 interrogatories. Defendant has no objection to answering all these interrogatories except 3, 5, 14, 20, 25, 26, 29, 30, 32, 33, 34, 41, and 44a.

The process seems to be purely a chemical one.

The controversy, on this motion, appears to be whether or not, in advance of the trial, the defendant can be compelled, by interrogatories, to disclose to a competitor an alleged secret chemical process.

The question presented by these papers is not free from difficulty. It has two distinct sides: One is that the practice now is, not only to simplify the issues, but to very liberally compel answers to interrogatories. McLeod Tire Corp. v. B. F. Goodrich Co. (D. C.) 268 F. 205. The other is: "One who makes or vends an article which is made by a secret process or private formula cannot appeal to the protection of any statute creating a monopoly in his product. He has no special property in either a trade secret or a private formula. The process or the formula is valuable only so long as he keeps it secret. The public is free to discover it if it can by fair and honest means, and, when discovered any one has the right to use it." Park & Sons Co. v. Hartman (C. C. A.) 153 F. 24, page 29, 12 L. R. A. (N. S.) 135.

There is therefore this difficulty, of avoiding the denial to plaintiff of that to which it may be entitled, in accordance with the present liberal tendency of compelling information, and, at the same time, avoiding the possibly unfair confiscation, by the public, of defendant's alleged secret process.

Under such circumstances, it has seemed to me that most careful attention should be given to what otherwise might be considered mere details. No case deciding an exactly

similar question has been presented to me by either party.

Plaintiff here is seeking an alleged secret chemical process of defendant.

Plaintiff, in its original memorandum, states: "So far as this memorandum is concerned it is sufficient to refer more particularly to interrogatory No. 20 which requires defendant to *state accurately and in detail the process* by which the tube of the signs complained of are manufactured." Interrogatory No. 20 is as follows: "State accurately and in detail the process by which the tubes of said signs (Chevrolet signs) were manufactured, the various steps of said process to be given in regular sequence up to the point where neon is caused to emit its characteristic color." (Plaintiff's brief.)

In other words, plaintiff seems to have taken this particular interrogatory (and I believe correctly) as a fair sample of information, which it desires to obtain from defendant by the interrogatories objected to, in advance of the trial, and simply by commencing this suit.

It may not be out of place to briefly refer to the claims of this Claude patent before considering the information which defendant is willing to give.

Claim No. 1 in substance covers a method of obtaining neon purified from nitrogen, oxygen, helium, etc., in a closed receptacle, provided with electrodes contained therein, establishing a rarefied atmosphere containing neon, and purifying the neon by means of an electric discharge.

Claim No. 2, the avoidance of absorption of neon during this operation.

Claim No. 3, the preliminary expelling of occluded gases from the walls of the receptacle and from the electrodes, by creating a partial vacuum together with an electric discharge and then admitting the neon in a highly rarefied atmosphere.

Claim No. 4, in addition to the above, by purging the receptacle by passing therethrough a quantity of the neon gas atmosphere to be purified, etc.

Claim No. 5, the method of obtaining neon purified from the above-mentioned gases by confining them together with a substance co-acting with the impurities within a receptacle from which atmospheric air has been to a great extent removed, and passing therethrough an electric discharge until the impurities have been removed from the neon.

A reading of the interrogatories consented to by defendant indicates that defendant is willing in regard to these claims to give much essential information, such as, for example: (8) "In the manufacture of said vacuum tubes of said signs were the electrodes thereof deprived of occluded gases? If so, how?"

Interrogatory 9 goes still further into such details.

Beside the above, we find defendant willing to inform plaintiff in substance of what luminescent gas or gases were employed in the manufacture of its vacuum tube signs prior to September 23, 1926, whether or not there was any material or substance put into such tubes to generate gas therein, if so what gas was so employed? Had the tubes been changed, altered, or modified prior to the commencement of this suit, the composition or the material of the electrodes used, dimensions, etc., as well as form and total area thereof, the amount of current used, and whether the walls of the tube are deprived of occluded gases, and if so whether or not heat was employed to accomplish this. The current used to operate said signs and a description of the transformers, if any, and whether or not a choke coil is used. The pressure required to operate said tubes as well as that existing therein when finally sealed. Gases, if any other than neon, which may be contained in the tubes when finally sealed. Whether or not (if electrodes are employed) the avoidance of absorption of neon is accomplished. If after the tubes are sealed was an electric discharge passed between the electrode to remove impurities from the neon, and if so the duration of such discharge, etc. Then follows several questions as to impurities, if any, and how they are removed. The duration and extent of any such heating or baking, if any, or if there were impurities elsewhere how they were removed. Then follows a number of questions as to occluded gases in defendant's product at the time of sealing, etc., and finally at least seven questions as to method used by defendant to treat impurities, such as high and rarefied atmosphere, partial vacuums, electric discharges, etc. In addition, defendant agrees to submit its blueprints and drawings to inspection.

If I understand plaintiff correctly, all the above is not sufficient. That what is wanted is the *actual secret chemical process* of defendant, on the theory that while this process may not turn out to be the same as that covered by the patent, it may appear to be an *equivalent* and thus infringe.

Plaintiff relies on the case of Wood Mfg. Co. v. Keiner-Williams Stamping Co., 4 F. (2d) 615, decided by Judge Garvin in this district. If the facts were similar, such de-

cision would and should be binding upon me. Commercial Union v. Anglo-South American Bank (C. C. A.) 10 F.(2d) 937.

I do not think, however, that a careful reading of the opinion in that case shows the contention there to be such as now made here. That case appears to be one largely relating to a *mechanical* process, all steps of which can be seen.

Judge Garvin relied on two cases. A. B. Dick Co. v. Underwood Typewriter Co. (D. C.) 235 F. 300, where, at page 301, Judge Mayer says: "Generally speaking, chemical cases cannot be compared in this regard to simple mechanical cases, where, for instance, a 'steel rod' must be a steel rod." Interrogatories 21 to 76 in that case along this line appear so far as I can see, for this, as well as other reasons, to have been held objectionable. Further on, in the same case (at page 304), the court did say, however, in summing up the whole matter: "It is as if plaintiff said: 'Here is your infringing device. If you say that because of chemical changes it may not now be a true specimen, then produce your true specimen and explain in full detail how you make it.' When a defendant complies, by frankly answering such a question, such is all that plaintiff is entitled to and can fairly expect."

This, considered solely by itself, might well seem to indicate the right in plaintiff to have the interrogatories in question answered by defendant, but I cannot so consider it alone. On the argument, and subsequently by a supplemental memorandum, pending this decision (leave to file which was duly granted), plaintiff indicates that its rights in this regard depend on its proposed investigation of whether or not defendant, while it "may not be using the combination of particular process steps, which are specified in the claims of the patent in suit, still defendant may be using the equivalent of those steps, which under the law would constitute an infringement." (Supplemental memorandum of plaintiff.)

In other words, plaintiff is really seeking this additional information as to a secret chemical process on the ground that same may be found to be an equivalent.

Granting, of course, the possibility of an equivalent idea infringing, this would first seem to me to require careful consideration of the question whether or not Claude (plaintiff's patent) made a long or short step in advance in the art. Such decision would determine the width of any equivalent. I do not think that in advance of the trial the

court on an interrogatory motion can or should ordinarily decide such questions.

Thus, it seems to me, that applying the above rule in the Dick Case to the case now under consideration, would mean that defendant, after answering all the interrogatories to which it has here consented to answer, examples of which I have quoted, would be compelled to go further and by written answers disclose to the world a purely secret *chemical* process, if any it has, prior to the trial (where such disclosure may possibly be protected), on the ground that such process may perhaps be shown to be an *equivalent* of the process patented by plaintiff.

The other case cited by Judge Garvin in Wood Mfg. Co. v. Keiner, etc., Co., supra, is that of McLeod Tire Corp. v. B. F. Goodrich (D. C.) 268 F. 205. In that case it was the working drawings, etc., that were desired, and the court there said, in allowing such inspection, that there was no absolute privilege, but went on to say: "If the defendant desires any safeguards to preserve the secrecy of the process so far as possible, that matter can be taken up upon the settlement of the order."

I can see how such an inspection can be safeguarded, but I do not see how answers to interrogatories can be equally safeguarded.

Here defendant consents to show its blueprints and drawings.

Nor does it seem to me that the decisions compel such disclosure as here desired.

"In any event the defendant will not be compelled to disclose his secret process, as he may show by affirmative proof that some one or more steps of the patented process has not been followed by him." Walker on Patents (5th Ed.) p. 588. The author cites Philadelphia Rubber Works Co. v. United States Rubber Reclaiming Works (D. C.) 225 F. 789.

That case was to a certain extent based on the case of Badische Anilin & Soda Fabrik v. A. Klipstein & Co. et al. (C. C.) 125 F. 543.

The Rubber Co. Case, supra, was affirmed (C. C. A.) 229 F. 150, where it appears that Judge Lacombe states: "The only witness available to show what process defendant employs was a detective; such process being carried on in secret. We concur with Judge Hazel that his testimony made out at least a prima facie case of infringement. Inasmuch as defendant introduced no evidence to show either what its process was or what it was not (Badische

Anilin v. Klipstein [C. C.] 125 F. 543), we think infringement was sufficiently proved."

In the Badische Anilin & Soda Fabrik v. Klipstein Case Judge Lacombe states, at page 557 of 125 F.: "If defendants have discovered some new process, which they wish to keep as a business secret, a court might not compel them to divulge it, but they could at least show by affirmative proof that some one or more steps (or all the steps) of the processes set forth in the patent had not been followed in the manufacture of the product. In the absence of any such proof, complainant would establish a prima facie case of infringement, even if the process were read into the product claims."

I believe the defendant has recognized this in its willingness to answer the 38 interrogatories. I further believe that it is within its rights in not answering the 13 remaining interrogatories, which require it to divulge, in advance of the trial, and in this public way, a secret *chemical* process, where the purpose of plaintiff may be, not to find whether the defendant is walking in the same steps already imprinted in the field of the art by Claude, but whether or not some one else is walking in that field in a way that only possibly may be held at the trial to be in an equivalent manner.

I therefore sustain the objections.

If this defendant prefers to take the chances, above indicated by the cases under such circumstances, of possibly being held on a trial to be an infringer, because of its silence, I believe it can do so, as far as interrogatories are concerned.

Submit order.

### On Reargument.

Reargument of motion to compel answers to interrogatories in a patent suit. The original motion was denied for reasons set forth in a memorandum opinion, dated December 29, 1926.

Plaintiff now moves for and has been granted a reargument of the motion, basing same, among other reasons, on the case of Grasselli, etc., Co. v. National, etc., Co. (D. C.) 282 F. 379.

Said decision was in this circuit and is and should be controlling on a similar issue.

Another reason advanced by plaintiff is that the citation from Walker, the cases Philadelphia Rubber Works v. U. S. Rubber Reclaiming Works (D. C.) 225 F. 789, and Badische Anilin & Soda Fabrik v. Klipstein & Co. (C. C.) 125 F. 543, mentioned in the memorandum of the court, were all before the promulgation of Rule 58 of the new Equity Rules, the inference being drawn therefrom that the new rules have changed matters and that said citations are no longer authoritative.

Before going further, this reargument gives me the opportunity to correct certain inaccuracies. First, it probably is true that the method or process in controversy is not strictly a chemical process. It seems to me, however, that it has many of the attributes of same. It certainly is not a mechanical process.

Also the interrogatories, which my record shows defendant declines to answer, were not accurately set forth, although the same were mentioned to a sufficient extent for the purposes of the decision, defendant declines to answer interrogatories 3, 5, 20, 29, 30, 34, 35, 36, 37, 38, 39, 40, 41, 42, and (a) of 44.

On the reargument counsel for defendant indicated his willingness to answer certain other interrogatories categorically, but I find nothing in either the briefs now submitted or in the record of the court proceeding showing exactly what these would be, and in any event a mere denial would be insufficient.

Defendant on the reargument did not retreat from its original opposition to interrogatories which it claims would compel it to divulge, in advance of the trial, its alleged secret process.

There is no doubt in my mind but that the decision of Judge Learned Hand (Grasselli, etc., Co. v. National, etc., Co., supra) is controlling authority here that: "The right of plaintiff to ascertain whether defendant is infringing prevails over the right of defendant to protect its trade secrets, so that, where the patent is for a process, defendant can be compelled to answer interrogatories as to whether defendant used certain elements, which did not constitute the whole process, if the interrogatories were in good faith, notwithstanding defendant's claim that thereby its trade secrets would be revealed, especially where the interrogatories were questions which could have been propounded to defendant at the trial."

There is an obvious difference between a mechanical patent or process and a chemical or quasi chemical one. In the former every step can be seen in the apparatus or method used by the defendant; this is not equally true of the latter kind.

If my previous decision was understood to hold that defendant need not divulge its process solely because it was a chemical or quasi chemical one, this was wrong, for such protection no longer exists. It was not, how-

ever, my intention to so hold. What I did intend to hold, and deemed plainly enough set forth, was that, where there was a secret chemical process claimed to be used by defendant, plaintiff could not compel the disclosure of same, by interrogatories, in advance of the trial, on the ground that such alleged secret process might be found to be an equivalent to that used by plaintiff.

In other words, here, plaintiff relies on a patent covering a certain method of obtaining "neon." There are five causes of action in the patent. Each one distinctly states the inventor's method of obtaining this "neon." It does not seem to follow that there may not be discovered other methods of obtaining "neon," some of which may be patented or be as yet a secret.

Plaintiff therefore is entitled, and I do not understand that I have held otherwise, to set forth the various steps of its method, and inquire of defendant, by interrogatories, not framed in the rigid language of the claims, but in form sufficient to eliminate further proof on the trial, what steps, or each and every said step, of plaintiff's method, is being used by defendant. Otherwise the trial court would not be benefited and the asking of questions in advance of the trial would not advance the issue at all.

It still seems to me that defendant by its agreement to the interrogatories mentioned had complied sufficiently with this right, as I read the claims of plaintiff's patent.

This still leaves the group of interrogatories objected to, and which call upon defendant to disclose to the public, and in advance of a trial (where such disclosure might be possibly protected), a possibly different method used by it, solely on the ground that such method is an equivalent.

Plaintiff, in asserting its right to have such interrogatories answered, states, as I understand it, that it already has made or shown a prima facie case. This, because it has, among other elements of proof, including I suppose, the anticipated answers of defendant to the interrogatories agreed to, an expert who has sworn or will testify, in substance, that plaintiff's method is such that any other method, either directly or by way of equivalent, will infringe. This may be so. Such a situation, however, seems to me to be one for the trial, at which cross-examination, and possibly introduction of proof by defendant, would be allowed, and it even may be that, if defendant then desired to do none of these things, plaintiff would at that time be entitled to a decree, to which result defendant could offer no objection, because of its si-

lence. This situation seems to me to be that indicated by the decisions in this circuit by Judge Lacombe and others mentioned in my first memorandum which do not, in my opinion, conflict in any way with the more recent decisions already mentioned therein and above.

Nor, if, as plaintiff contends, it already has a prima facie case sufficient for a decree, could plaintiff be called upon to answer at the trial further questions unnecessary for the obtaining of such decree.

There remains, therefore, but one question, and that is whether the recent decisions, particularly that of Grasselli, etc., Co. v. National, etc., Co. supra, have set forth a rule requiring the defendant to answer the disputed interrogatories here, even though plaintiff claims it already has sufficient proof to make a prima facie case, where the sole purpose is to learn from defendant if it is using some method, other than that set forth in the claims of the patent, for the reason that plaintiff has an expert who will swear that same must be an equivalent. I do not think that the cases indicate any such rule.

Rule 58 of the new Equity Rules, as fully discussed at page 241, Hopkins New Federal Equity Rules, Annotated (4th Ed.), still restricts the discovery to material facts necessary to plaintiff's cause of action or defendant's defense.

If plaintiff already has sufficient to make a prima facie case, provided there is no defense, there would seem to be no good reason for compelling further disclosure, and if a defense is interposed, it must be based on proof, at the trial, at which time, if a disclosure is to be made of a secret process, in order to avoid same being held to be an equivalent, the court can protect to a reasonable degree such disclosure. This cannot be done where the information is required to be given by interrogatories.

It seems to me that the case of Grasselli, etc., Co. v. National, etc., Co., supra, carefully distinguishes between the rule requiring disclosure, already mentioned, and the rule, which I think still exists, against disclosure prior to a trial of an alleged equivalent, secret process. Judge Hand states at the close of his decision, as follows: "In Federal, etc., Co. v. International, etc., Co. (C. C.) 119 F. 385, it would at first blush look as though Judge Townsend had generally laid it down as a rule that a defendant might avoid answering on the ground that to do so he must disclose trade secrets; but the decision did not in fact go so far. There the interrogatory asked for a disclosure of the structure of

the defendant's machine, in case it was not made in accordance with the patent. The interrogatory was certainly not relevant to the plaintiff's case, and, being oppressive, could not be enforced."

For the above reasons I am still unable to agree with counsel for plaintiff that defendant must be compelled by interrogatories to disclose an alleged secret chemical or quasi chemical process, on the theory that it may be found to be an equivalent of the plaintiff's process, even if an expert for plaintiff has or will swear that any method other than plaintiff's method will be an equivalent, and therefore infringe.

This might be sufficient at the trial, but is insufficient, in my opinion, on a motion such as this, and very possibly might occasion greater loss to defendant by taking from him and disclosing his secret process which the court may ultimately find not to be an equivalent, than I can see would be occasioned plaintiff by compelling him under the above circumstances to go to trial and there await results of cross-examination or other proof.

In view of the state of the equity calendar, I see no reason why a trial cannot be had in this case at the next term (April).

Motion denied.

