## SHIMADZU et al. v. ELECTRIC STORAGE BATTERY CO.

### No. 7727.

District Court, E. D. Pennsylvania.

Feb. 5, 1934.

Joseph W. Henderson, of Philadelphia, Pa., James T. Newton, of Washington, D. C., E. B. Whitcomb, of Toledo, Ohio, and Geo. Whitefield Betts, Jr., of New York City, for plaintiffs.

Augustus B. Stoughton and Edward S. W. Farnum, Jr., both of Philadelphia, Pa., A. F. Kwis, of Cleveland, Ohio, and Hugh Morris, of Wilmington, Del., for defendant.

KIRKPATRICK, District Judge.

In this patent infringement suit plaintiff has moved for an inspection of the defendant's processes, methods, and products and of its apparatus in actual operation.

Although infrequently exercised, there is very little doubt or difficulty about the power

394

of a court of equity to order the disclosure by physical inspection of evidence in the defendant's possession. The following well-settled principles govern:

First. The power exists, although the plaintiff has no absolute right to invoke it.

■ Second. It should not be exercised unless the plaintiff makes a showing that the defendant is violating his right, supported by more than his own suspicion or belief. Obviously, this does not mean that he must decisively establish infringement. If he could do that, there would be no need for inspection and he would defeat his own motion. A prima facie case will suffice. How much less than that will do it need not here be considered.

■ Third. It should not be exercised where the evidence can be satisfactorily obtained elsewhere. It necessarily involves an invasion of the defendant's business privacy and should be avoided where reasonably possible.

■ Fourth. If exercised, it should be safeguarded so that information or secrets unconnected with the subject-matter of the suit will not be disclosed to competitors.

For the above principles reference may be had to Rowell v. William Koehl Company (D. C.) 194 F. 446; Colgate v. Compagnie Francaise (C. C.) 23 F. 82; Diamond Match Company v. Oshkosh Match Works (C. C.) 63 F. 984; Osram Lamp Works, Ltd. v. British Union Lamp Works, Ltd. (1914) 31 R. P. C. 309; and Germ Milling Company, Ltd. v. Robinson, 1 T. L. R. 38, 1 R. P. C. 217 (1884).

To them may be added a general limitation which some courts have seen fit to apply, namely, that the case must be an exceptional or extraordinary one. This amounts to little more than a general caution.

One of the patents here involved is for a process of manufacturing powder, composed of lead suboxide mixed with powder of metallic lead, which forms the basis for the paste with which the plates or grids of electric storage batteries are coated.

The plaintiff offers, as a prima facie case of infringement, the sworn testimony of one Hall, the defendant's engineer in charge of these operations since 1921 given in an interference in the Patent Office in 1928 and 1929. The situation is a peculiar one. At that time Hall was endeavoring to establish the fact that he had been producing the powder in question at the defendant's plant since 1921 by the process claimed in the plaintiff's patent (the plaintiff's application date being in 1923). His testimony was positive and un-

equivocal to that effect. The law examiner accepted it. The Patent Office tribunals rejected it; that is, they held that it did not establish Hall's contention. The Court of Custom and Patent Appeals affirmed the decision of the Board of Appeals of the Patent Office substantially holding that Hall was in error when he said that he produced the product of the patent in the defendant's plant, reasoning from this that he could not have been using the process, and further holding that even if he had been, he was not sufficiently corroborated as to conception and reduction to practice prior to the Shimadzu filing date.

In the interference, the present plaintiff Shimadzu contended that Hall was not making the product of the patent. But he had not been permitted to see it or observe the process—only attempted to produce it by what he understood to be a similar machine. There was never any question that Hall was producing a fine lead oxide powder.

■ I think it is a prima facie case. The fact that the Patent Office tribunals rejected this testimony, or at least interpreted it as not meaning what Hall claimed for it, is not binding upon me, particularly since Hall's affidavit in opposition to this motion contains no suggestion that he does not still stand by it. That issue is carefully avoided. To the plain questions, "Do you use the process of the Shimadzu patent and is your product the product of that patent?" which naturally arise in the mind of the court, the answer of the affidavit is that in 1924 he was of the opinion that some of the product he had made corresponded with Shimadzu's sample, which he then considered his invention. And then, he says, it subsequently developed that the scope of his invention "was somewhat curtailed." The one thing he does say with positiveness is that the defendant is now using the same process and making the same product about which he testified in the interference, and he nowhere says that it is not the product and process of the Shimadzu patent.

The necessity for an inspection rather than resorting to the ordinary means of obtaining evidence lies largely in the nature of the product. The patent discloses, and there is no real dispute, that the powder is chemically highly reactive—an extremely fine powder which is quickly affected by air, moisture, and heat. It is chemically changed by the addition of other substances to make a paste of it, and when it comes upon the market in the plates of storage batteries it is still further metamorphosed. Even if it were ob-

tainable in powder form, which it is not, it is likely to alter so rapidly under ordinary atmospheric conditions that, unless taken direct from the machine and preserved in some way, it will defy accurate analysis. The defendant has no way, unless permitted to so take samples, of finding out with the requisite exactness what the constituents of the plaintiff's product are. Obviously these facts, together with the fact that the process at every step requires careful conditioning, supply the necessary element for the exercise of the court's power.

I therefore conclude that an inspection should be allowed. This opinion is not to be taken as an order. It is suggested that, before any order is entered, the parties confer with me as to the terms upon which it should be made, and as to proper and reasonable safeguards.