## FLORIDIN CO. v. ATTAPULGUS CLAY CO. et al.

### No. 1247.

District Court, D. Delaware.

March 14, 1939.

James M. Malloy, of Wilmington, Del., John J. Darby and George W. Porter (of Cushman, Darby & Cushman), all of Washington, D. C., for plaintiff.

Herbert L. Cohen, of Wilmington, Del., Merrell E. Clark, and Paul R. Ames (of Fish, Richardson & Neave), all of New York City, for defendants.

NIELDS, District Judge.

Motions by plaintiff for production of documents under rule 34, Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and for an order compelling answers to certain questions under rule 37; and defendants' motion to terminate or limit examination under rule 30.

This is a suit for infringement of Hartshorne patent No. 2,079,854, granted May 11, 1937, and assigned to plaintiff. The real defendant is Attapulgus Clay Company. Plaintiff mines and processes fuller's earth in the Northern part of Florida. Defendant is engaged in the same business and its plant and mines are in the Southern part of Georgia within a few miles of plaintiff's plant.

The patent in suit covers a process for improving the efficiency of fuller's earth, and also the product of this process. The claims of the Hartshorne patent are directed to a process for treating fuller's earth to increase its decolorizing efficiency in which the fuller's earth is. extruded under pressures in excess of 100 lbs. per square inch or under pressures sufficient to increase the adsorptive capacity of the fuller's earth from 10% to 40% as compared with the same earth which has not been extruded. Some of the claims are limited to the combined moisture being not less than 2% and the free moisture being in excess of 40%. Claim 6 is directed to the product of such an extrusion.

Both plaintiff and defendant answered interrogatories and filed bills of particulars. In answer to plaintiff's interrogatories defendant described its operations in detail, pointing out that its tests of the pressures at the die plate in its extrusion operations showed them to range from 600 to 900 lbs. per square inch (i. e., more than 100 lbs. per square inch). It also pointed out that the decolorizing efficiency of most of the extruded fuller's earth produced by the defendant during the period complained of was from 15% to 25% higher (i. e., within the range 10% to 40%) within that of similar fuller's earth not passed through the extrusion machine. It also pointed out that its determination of the combined moisture and of the free moisture content of its materials showed its combined moisture to range from 7% to 11% (i. e., above 2%) and that its free moisture range was from about 36% to 47% (i. e., above 40%). Thus there is no issue raised in regard to these various points. Although there are no apparatus claims in the patent in suit and so no issue is raised as to infringement by the apparatus, deponent Hubbell has described defendant's apparatus in considerable detail and submitted photographs of it. Defendant is also willing to supply plaintiff with specimens as requested in paragraph 30 of the motion for production of documents. Thus the facts already set forth in the record give plaintiff all the information necessary to support its charge of infringement, if such charge is well founded.

Thereafter plaintiff proceeded to take depositions on December 5 and 6, 1938, calling for examination: (1) Defendant's Vice-President H. L. King, Jr.; (2) L. J. Fuller, an alleged prior inventor and user; (3) R. H. Hubbell, Jr., defendant's technical director, and (4) defendant's resident counsel T. W. Quinn who also has acted in the capacity of patent solicitor for the alleged prior inventor, Fuller.

The taking of depositions was adjourned on December 6, 1938, because of defendant's refusal to produce any of the documents sought by the motion under rule 34 and the refusal of the witnesses to answer the questions set forth in the motion under rule 37.

Motion for Production of Documents

Paragraph 1 requires the production of "typical records, reports or other documents (but not all of them) showing the annual increase in average decolorizing efficiency, if any, of fuller's earth sold commercially by the defendant during the period 1922 to the adoption of extrusion in or about September, 1937".

■ These records relate to defendant's commercial operations long before the period complained of (the patent in suit not having issued until May 11, 1937) and are not material to any issue involved in the case. The request requires defendant to review all of its records of decolorizing efficiency from 1922 to September, 1937. This is unreasonable. Deponent King stated that to the best of his recollection the increase in decolorizing efficiency by various procedures during that period was about 20% and that subsequent to defendant's adoption of extrusion it had improved its commercial product by about 20% to 25%. In view of the facts stated in the depositions there is no issue raised in this case as to the utility of extrusion of fuller's earth. This request is denied.

■ Paragraphs 2 and 3 of the motion require defendant to produce and permit inspection of all records, reports and other documents relating to the competitive situation which arose in 1936 as the result of the sale of extruded fuller's earth by the plaintiff or showing the results of tests carried out by defendant on plaintiff's product during that year. This period is prior

972

to the issuance of the patent in suit. Again, no issue is raised in this case as to the utility of the extrusion of fuller's earth or of the particular process used by plaintiff. The request is unreasonable and is denied.

Paragraphs 4 and 5 of the motion are granted.

Paragraph 6 requires the production of all records, reports and other documents relating to efforts, other than extrusion, made by defendant in 1936 and 1937 to increase the efficiency of fuller's earth. Plaintiff is not entitled to inspect and make copies of all of defendant's records, reports and documents showing other work defendant has done in attempting to increase the efficiency of fuller's earth. This request is not only not material to the present suit but includes information as to secret processes, developments and research confidential to defendant and is denied.

Paragraphs 7 and 8 require the production of all records, reports and other documents relating to and indicating how defendant received information in June, 1936, that plaintiff was extruding fuller's earth and the nature of such information and indicating the purpose of certain trips of defendant's employees. This period is prior to the issuance of the patent in suit. Defendant's activities at that time are not material to any issue involved in this suit. Deponent King has already stated how this information was received. An examination of defendant's records in regard to this can serve no useful purpose. The request is unreasonable and is denied.

Paragraph 9 goes even further and asks for any other correspondence or memoranda of conversations with manufacturers of extrusion machinery during 1936 and 1937. This is an unreasonable request and requires an extensive review of defendant's records in regard to matters not material to any issue involved in this suit. The patentee of the patent in suit was not the first to extrude fuller's earth as shown by patent to Ikeda and other prior art patents set up in the answer. Plaintiff is not entitled to inspect all of defendant's correspondence and memoranda of conversations with manufacturers of extrusion machinery during this period. Such records include references to details not material to the issue involved and relate to secret processes, developments and research made by or on behalf of defendant. This request is denied.

Paragraph 10 requires the production of any drawings which were made by or on behalf of defendant during 1936 or 1937 showing extrusion apparatus or illustrating the effect of extrusion of fuller's earth. Although the claims of the patent in suit are not concerned with apparatus, drawings made by or on behalf of defendant in 1936 and 1937 and illustrating the effect of extrusion on fuller's earth may be material to a full understanding of defendant's processes and product. Accordingly, the court directs the production of any such drawings already in the possession of the defendant provided there be no disclosure of confidential information as to defendant's research and development.

Paragraph 11 requires the production of all records, reports or other documents relating to tests made on fuller's earth extruded during 1936 at the plants of several manufacturers of extrusion machinery. This is an unreasonable requirement since it includes any tests made by these manufacturers. Such records, reports and documents contain information as to secret processes, development and research by defendant. To require it to disclose such information to plaintiff is improper and unreasonable and is denied.

It is submitted that it is not the intention of the Rules of Civil Procedure to open all of a party's records to the other party on the vague chance that they may contain some material that is relevant to some theory advanced by the other party. Such an investigation of defendant's records is not necessary to the proof of such theory and it is unreasonable to require the defendant to produce all such records and disclose them to plaintiff together with the secret information contained in them.

Paragraph 12 has been cancelled.

Paragraphs 13 and 14 require the production of any records, reports or other documents indicating when the Ikeda patent No. 1,630,660 first came to the attention of the defendant and relating to the purchase of that patent, or any contacts with the inventors of that patent or their assignee. This Ikeda patent was issued more than two years before the filing date of the patent in suit and the disclosure of the Ikeda patent is relied upon by the defendant as an anticipation of the claims of the patent in suit. Any contacts defendant may have had with the patentees or their assignee are not material to this defense. Defendant's counsel

acquired the patent before the Hartshorne patent was issued. It makes no difference whether defendant owns the Ikeda patent and under what conditions it acquired it. These records are immaterial to any issue involved in the case. This request is denied.

Paragraphs 15, 16 and 17 require the production of all records, reports or other documents relating to work done by experts or tests made by or on behalf of defendant, and all records, reports and documents showing chemical or physical changes which take place in fuller's earth upon extrusion and of records as to the effect on decolorizing efficiency which result from variations in details of apparatus and procedure. This is an attempt to obtain complete information as to defendant's secret processes, research and development and goes far beyond anything material or necessary for the determination of the issues involved in the case. The new Rules of Civil Procedure do not contemplate any such investigation of the defendant's records as clearly indicated by the provision in rule 30(b) for the protection of a party against investigation of its secret processes, development and research. These requests are denied.

Paragraph 18 requires the production of all records, reports and other documents relating to all extrusion tests of fuller's earth made by or on behalf of defendant showing decrease in efficiency or increase less than 10%. Such increase is outside of the scope of the patent in suit and to require defendant to produce all of its records in regard to extrusion tests puts an unreasonable burden upon defendant and an unnecessary disclosure of information as to development and research. This request is denied.

Paragraph 19 requires the production of detailed drawings of the extrusion machinery installed by defendant at Attapulgus, Ga., in the latter part of September, 1937, including drawings of all die plates which have been used in commercial production of extruded fuller's earth. Although none of the claims of the patent in suit is directed to apparatus, the details of defendant's extrusion machinery may be material to a complete showing and understanding of defendant's process and product. Accordingly this item of plaintiff's motion is granted.

Paragraph 20 requires the production of all records and correspondence between defendant and Welding Engineers, Inc., and L. J. Fuller relating to the design and production of the machinery covered in the preceding paragraph where such records include correspondence prior to the issuance of the patent in suit and relate to the confidential research and development work done by or on behalf of defendant. The motion as to such records is denied. Otherwise and in other respects this item is granted.

Paragraph 21 requires the production of records, reports or other documents relating to the reasons for and results of changes in defendant's die plate orifice. Although the claims of the patent in suit are not directed to the construction of the die plate orifice, yet such records, reports and documents may relate to defendant's process and product. This item of plaintiff's motion is granted.

Paragraph 22 requires the production of records, reports and other documents relating to the cost of development of the extrusion process and installation and commercial operation of the extrusion process before and after certain changes in defendant's construction. As already pointed out no issue is raised in this case as to utility. It is unnecessary for plaintiff to urge that these records relate to that question. The question of damages and profits is a question for accounting and until ordered plaintiff is not entitled to this information. Moreover these records include information as to defendant's secret processes, research and development and for that reason should not be disclosed. This request is denied.

Paragraph 23 requires the production of all reports, records and other documents setting forth the water content specified in United States Patent to Ikeda No. 1,-630,660, converted into percentage terms. The Ikeda patent speaks for itself and plaintiff is as well able to prepare a conversion to percentage terms as is defendant. This request is denied.

Paragraph 24 requires the production of all drawings of apparatus used by defendant for measuring die plate pressures. This relates to defendant's partially completed program in preparation for its defense in this suit. The new Rules of Civil Procedure were not intended to permit a party to pry into the details of the other party's preparation for trial. This

request is denied. Paragraph 25 requires the production of a copy of the application filed by Lawrence J. Fuller before the issuance of the Hartshorne patent in suit but subsequent to the filing date of the Hartshorne application and all papers therein, at least such parts as relate to a process of extrusion of fuller's earth by which the decolorizing efficiency of the earth may be increased 10% or more or to extruded fuller's earth in granular like form and which has been subjected to extrusion under pressure to increase its adsorptive capacity at least 10% to 40%. This application can not be relied upon to prove prior invention by Fuller since it was filed after the application for the patent in suit. The disclosure of this application can have no bearing upon either the validity or the infringement of the Hartshorne patent. Nevertheless, the contents of this application may have some bearing upon the credibility of L. J. Fuller or of his interest in this case or of the relationship between Fuller and defendant. Accordingly under this item production of the Fuller application to John J. Darby, counsel for plaintiff, will be granted to enable him to point out to the court any passages of the application or accompanying papers upon which he relies so that the court may then pass upon the materiality of this evidence.

Paragraph 26 requires the production of all correspondence and other papers preliminary to an agreement between defendant and L. J. Fuller or Welding Engineers, Inc., in connection with the purchase of the Fuller application. Such correspondence and accompanying agreement are not material to the issues involved in this suit. This item is denied.

Paragraphs 27, 28, 29 and 30 are not objected to and are granted.

Paragraph 31 requests the production and the right to inspect and make photographs and drawings of defendant's commercial apparatus employed in the extrusion of fuller's earth. Although the claims of the patent in suit are not directed to the apparatus the right to inspect and make photographs and drawings of the apparatus may have some bearing upon a full and complete understanding of defendant's process and product. Accordingly, this request is granted, provided there be no disclosure of confidential or secret information as to defendant's processes.

## Motion to Compel Answers to Certain Questions

Fuller should answer questions (c) and (d). These questions relate to the interest of the witness in the Fuller application after its assignment or in any patent that may be issued thereon. The credibility of the witness may be affected by such an arrangement or profit. In all other respects the motion to compel answers to questions must be denied.

## Motion to Terminate Examination

Defendant's motion to terminate or limit the examination at this time is denied in view of the production of documents directed by the court and the additional answers directed to be made by the witness Fuller.

An order may be submitted.