## LEVER BROS. CO. v. PROCTOR & GAMBLE MFG. CO. et al.
### Civil Action No. 1058.

District Court, D. Maryland.
May 7, 1941.

Worthington Campbell, Eben M. Graves, and Houget, Neary & Campbell, all of New York City, Walter J. Blenko, of Pittsburgh, Pa., Charles W. Riley, Roger T. McLean, and Pennie, Davis, Marvin & Edmonds, all of New York City, and Edgar Allan Poe and Bartlett, Poe & Claggett, all of Baltimore, Md., for plaintiff.

Marston Allen, E. S. Allen, and Allen & Allen, all of Cincinnati, Ohio, Francis G. Cole, of Washington, D. C., Thomas J. Byrne and Cooper, Kerr & Dunham, all of New York City, A. C. Denison, of Cleveland, Ohio, Frank F. Dinsmore, of Cincinnati, Ohio, and William A. Grimes and Ritchie, Janney, Ober & Williams, all of Baltimore, Md., for defendants.

CHESNUT, District Judge.

This usual type of patent infringement case has reached the stage only of motions on interlocutory matters. The complaint was filed February 27, 1941. On March 18, 1941, defendant moved for a bill of particulars; on March 20, 1941, the plaintiff obtained leave to take depositions of Tyler Weymouth, an officer of the defendant, pursuant to rule 26(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The defendant's answer has not yet been filed.

On the examination of Weymouth (covering 63 typewritten pages) the witness declined to answer certain questions, the objections to which by the defendant were placed principally on the ground that they required a disclosure of the defendant's secret trade process. In consequence, on April 25, 1941, plaintiff filed a motion for an order to compel the witness to answer these questions; and on the same day filed a separate motion for the production of documents for inspection, copying or photographing. The defendant objects to the production of such data primarily on the same grounds, that it would require disclosure of its secret trade process; and also because the documents demanded are not "designated", and the demand is too general and inclusive.

Plaintiff produces and sells the widely advertised Lux soap, and has recently (September 24, 1940, as assignee of Bodman) obtained United States Letters Patent No. 2,215,539 for an improved process of making soap which it is now widely advertising under the trade name of "Swan". The defendant is the well known producer of Ivory soap which in past years has been extensively advertised as "99 44/100% pure", and since 1939 has been made by an improved process. The competing products look alike, are of like size, sell at the same price and are said to have generally similar qualities. It is apparent at once that the parties are in sharp competition for an extensively used household article.

The specifications of the plaintiff's patent state that its new process produces for the first time a milled soap which will float, and that it is also aerated. The first ten

claims of the patent are for the process and the second ten claims are for the product. Claim 1, which is typical of the broad process claims, reads as follows:

"A process for making a floating soap with a uniformly aerated continuous mass having a dispersion of fine voids throughout and having a characteristic texture and firmness similar to milled soaps and shape-stability, comprising subjecting a soap mass having a moisture content of less than about 25% to a temperature at which the mass is plastic. or semi-fluid and continuous, aerating the continuous mass with a compatible gas, and forming. the mass into bars or cakes."

Analysis of this claim (apart from the product itself) shows that the process comprises (1) heating a soap mass until it is plastic or semi-fluid and continuous; (2) which mass has a moisture content of less than 25%; (3) aerating the mass, and (4) forming it into bars or cakes.

Claim 5 is more specific, and includes elements (1) of moisture content of the soap mass 5 to 25%; (2) working the soap mass in a closed chamber in the presence of air at a temperature from about 160 to 225 degrees F.; (3) uniformly dispersing air throughout the mass and (4) while maintaining sufficient pressure to retain air in the mass (5) releasing the mass to cause it to solidify in a continuous aerated state.

As a result of the hearing on these motions, at which time the respective parties were represented by numerous counsel and the subject matter somewhat elaborately argued, the defendant's counsel voluntarily made substantial further disclosures with regard to the nature of its process for the manufacture of its improved Ivory soap, and also supplied certain other incidental information in response to certain questions which had not been answered by the witness Weymouth, so that the remaining questions unanswered in substance call for full disclosure of the defendant's alleged secret process. The comprehensive question presenting this issue as put to the witness by plaintiff's counsel was:

"Now Mr. Weymouth, will you please describe for us, in your own words, the process of manufacturing new Ivory from beginning to end?"

The defendant's disclosure made at the hearing and the statement of its position was submitted in the form of a typewritten statement reading as follows:

"Molten kettle soap is first reduced in moisture by heat and evaporation, while remaining molten, resulting in a molten soap of 22½% moisture. This soap without loss of temperature is caused to flow through proportioning equipment where perfume, other ingredients and air are injected into the soap. The apparatus used at this stage is shown in the Burt patent of Proctor & Gamble No. 2203980 (copy attached). This equipment ends with a pump, in this instance a gear pump, which acts to commingle the soap, perfume ingredients and air, causing the material to flow through a conduit and to continuous refrigerating equipment.

"We desire to keep confidential the details of operation at this stage. In the equipment, which is really a continuous ice cream freezer equipped with scrapers, the soap is rapidly chilled· in about twenty seconds. The machine is a well known machine known as a Votator. In practice the refrigerating equipment has an outlet casing, through which the soap passes, equipped with ·stirrers with (which) commingle, for a few seconds, the colder and warmer portions of soap. This casing has an outlet opening in the shape of a bar through which the soap extrudes.

"The extruded bar is form retaining but lacking in mechanical strength and is discontinuous or granular. The pump first mentioned above causes the soap to flow through the refrigerating equipment. There is no pressure on the soap except such as to maintain this flow.

"Without further working, the extruded bar passes through other chilling equipment, the final product ready for cutting and stamping being at slightly above room temperature. We do not want to be required to give details as to this final chilling stage of the process other than above."

It thus appears that the defendant admits that its process at least includes some of the elements of the plaintiff's broad claim No. 1; in that the defendant's process involves a soap mass of less than 25% moisture content which is aerated, and possibly the defendant's mass is also to be properly considered plastic during the process. It is therefore arguable that if the plaintiff's broad process claim is valid the disclosure made by the defendant would constitute a prima facie case of infringement although of course no definite opinion is now being expressed on this point. Apparently what the defendant is unwilling to

disclose is a particular temperature control or so-called chilling process which it is not yet clear is an element of the plaintiff's claims.

Without intending to express any opinion, however tentative, as to the merits of the case, I take the view, for the purposes of the present motion, that the defendant's claim for secrecy as to the particular feature of its process is advanced in good faith, and not as a mere pretext for withholding evidence of what really constitutes infringement. It is very difficult if not impossible at this preliminary stage of the case to form any certain opinion on this question, other than to say that the court assumes that the point being made by eminent counsel for the defendant is advanced by them in good faith and in a reasonable belief of the validity of their client's claim. It is also noted that the complaint charges infringement only on "information and belief". The question thus presented is whether the bona fide claim of privilege from public disclosure of a secret process should be granted or denied to the defendant *at this stage of the case*.

This subject matter is largely discussed in the new 4th Edition of Wigmore on Evidence, Vol. VIII, § 2212, with a wealth of annotations as to decided cases, many of them patent cases. The substance of the author's view, supported by numerous cases both English and federal, is that such a claimed privilege is not absolute but conditioned upon the circumstances of the particular case. The difficulty here is that very possibly the decision on the particular point goes to the heart of the controversy between the parties, at a very preliminary stage of the case when the court is not adequately informed as to the ultimate relevancy or materiality of the point in issue. If the defendant is required now to disclose its secret process, it may ultimately develop at the trial on the merits of the whole case that the disclosure was really unnecessary to the final decision of the case; with the result that the defendant may have been very seriously prejudiced with respect to a very important feature of its business, which is not yet at least protected by any patent. It is intimated, but not expressly stated, that both parties now have patent applications pending in the Patent Office. On the other hand, the refusal to compel present disclosure is not final, because it may develop at the trial on the merits that the defendant's claimed secret process is both relevant, material

and necessary to a decision, and the defendant's rights, if any, can be very much better safeguarded if a decision on the point is reserved until the trial of the case. Nor does it appear that this will be importantly disadvantageous to the plaintiff because, as the case is a non-jury case, the court can sufficiently control the order and time of proof by adjournment of hearings if necessary, or otherwise, in order to prevent surprise, if any, to the plaintiff, and to give the plaintiff adequate opportunity to develop fully the merits of its contention with respect to the validity of the patent and alleged infringement by the defendant. In other words, I take the view that the defendant has an apparent equity against present disclosure which ought to be protected at least until the attrition of the trial requires a different ruling.

There are sufficient precedents for this course. The case of Claude Neon Lights, Inc., v. Machlett & Son, D.C., 31 F.2d 983, is a case very much in point where a similar ruling was made. See also Badische Anilin v. Levenstein, 24 Ch.Div. [1893] 156, 169, and comment thereon by Lord Alverstone—who was counsel in the case—in Recollections of Bar and Bench, published by Longmans, Green & Co. 1915; and Mistouske v. Mandelberg, 6 Times L. R. 207 (Q.B.Div. [1890]); Tetlow v. Savournin, 15 Phila., Pa., 170; Star Kidney Pad Co. v. Greenwood, 3 Ont. 280, (Q.B. Div. [1883]); Federal Mfg. Co. v. International Bank Note Co., C.C., 119 F. 385; Floridin Co. v. Attapulgus Clay Co., D.C., 26 F.Supp. 968, 972; Shimadzu v. Electric Storage Battery Co., D.C., 6 F.Supp. 393; Gasoline Products Co. v. Refining Co., D.C., 12 F.2d 98, 99; International C. P. Co. v. Caledonia Cellulose Co., D.C., 55 F.2d 380; Du Pont De Nemours & Co. v. Byrnes, D. C., 1 F.R.D. 34, 40; Walker on Patents, 6th Ed., § 575, p. 643. It is true that some cases have permitted disclosure of secret processes in advance of trial when it is apparent that the information is relevant and material to the issue in the case. Grasselli Co. v. National Aniline Co., D.C., 282 F. 379; Steinfur Corp. v. Moos Corp., D.C., 54 F.2d 813; Wood Mfg. Co. v. Keiner-Williams Co., D.C., 4 F.2d 615; United States Gypsum Co. v. Pacific Co., D.C., 22 F.2d 180; Nakken Corp. v. Rabinowitz, D. C., 1 F.R.D. 90; Claude Neon Lights, Inc., v. Rainbow Light, D.C., 31 F.2d 988; but as will appear from the case last cited (opinion by Judge Augustus Hand) the exercise of the court's discretion is much

684

affected by the facts of the particular cases. All but three of these decisions were before the adoption of the new rules of federal civil procedure but I do not understand that the point in issue has been materially affected by the new rules. It is true that the right of discovery by interrogatories and deposition of the adverse party has been rather expanded by the new rules, for the purpose of developing information useful to the parties in preparation for trial and to prevent surprise at the trial. This particular subject was discussed in this court in the recent case of Coca Cola Co. v. Dixi-Cola Laboratories, 30 F.Supp. 275, more particularly with respect to the permissible scope of interrogatories; but much that was there said in general with regard to the effect of the new rules is applicable here. Rule 26(b) with regard to the scope of examination by deposition expressly provides that the witness is not required to divulge matter that is privileged or which is not relevant to the subject matter of the case. And rule 30(b) further provides that the court may limit the scope of the examination by ordering "that certain matters shall not be inquired into" or that "secret processes, developments, or research need not be disclosed". One great advantage of the new F.R.C.P. is the flexibility of application made possible in many cases by the exercise of sound discretion by the judge. Generally disclosure of facts by interrogatories or deposition or production of documents, is desirable to promote the "just, speedy and inexpensive" determination of the suit; but the rules clearly recognize that there may be exceptional cases where it would be unwise to inflexibly apply the general rule. The use of the rules, where discretion is permissible, should be in conformity with the needs of the particular case.

█ I therefore conclude that the motion to require the witness to answer the particular questions herein discussed should be refused at this time.

█ The separate motion for the production of documents above referred to presents substantially the same question. In general the documents now called for seem to relate to the details of the defend-

ant's particular process for the making of Ivory soap. For the same reasons given with respect to the questions to the witness Weymouth, I think the order for the production of such documents should not be made at this time; but the defendant should be required to make the records and documents referred to in the motion available at the trial of the case on the merits, at which time their relevancy and admissibility can be more advisedly determined. Rule 34, F.R.C.P., leaves it discretionary with the court as to whether the order for the production of documents should be passed, and limits the scope of the production, if required, to those that are not privileged but are material to the issues involved in the action.

█ The motions as now made are also too general and comprehensive, as for instance (No. 3) "all written reports, memoranda, or other records of conferences of officers or members of the technical staff of the defendants attended by Tyler Weymouth in which the processes employed or to be employed in the manufacture of new Ivory soap were discussed". Floridin Co. v. Attapulgus Clay Co., D.C., 26 F.Supp. 968; Kenealy v. Texas Co., D.C., 29 F. Supp. 502; Vendola Corp. v. Hershey Choc. Corp., D.C., 1 F.R.D. 359; Poppino v. Jones Store Co., D.C., 1 F.R.D 215; French & Sons v. Carleton Venetian Blind Co., D.C., 30 F.Supp. 903.

The defendant's demand for "particulars" has not been argued, and of course is not now ruled on, but it would seem obvious that the defendant's present refusal to more explicitly state its alleged secret process, will have a necessary bearing on some of the items of its demand for particulars. It is doubtful whether a prolonged battle over motions and demands preliminary to the trial of this case on the merits will promote the speedy and just disposition of the case. In the last analysis, many of these patent cases depend largely on opinion rather than on substantially controverted facts. If the parties desire a prompt trial, the court will assign an early date after the defendant's answer is filed.

Counsel may submit the appropriate orders in due course.