DREW, Justice.
In this opinion we will refer to appellants a-s Lloyd’s and appellee as Hawthorne.
On December 1, 1949, a P-51 Mustang Airplane powered by a 1450 H. P. Rolls Royce engine, owned by Hawthorne and insured by Lloyd’s, crash landed with its wheels up. The contract of insurance by Lloyd’s provided that it should be liable only in the event of total loss. The policy provided “total loss shall be deemed to mean that the aircraft insured shall have suffered at least 85% structural damage'to the air frame and 85% structural damage to the engine.”
Lloyd’s promptly denied liability, claiming neither the air frame nor engine was more than 85% structurally damaged. On October 31, 1950, eleven months after the crash, Hawthorne instituted this suit. Lloyd’s answer set up the specific defense “that the damage to the plane mentioned in the complaint was not a ‘total loss’ within the intent,' m'eaning and' purview of said aircraft insurance contracts.”
On July 26, 1951, an order was entered setting the cause for trial on October 22, 1951. Later, on Hawthorne’s motion, trial was continued for the term and set for *309 trial at the call of the docket for the next ensuing term, which was January, 1952.
On August 21, 1951, Hawthorne • pro-pounded certain interrogatories to Lloyd’s. The answers of Lloyd’s to the interrogatories disclosed that in December, 1949, its representatives examined the airplane and determined that it was not a total loss within the meaning and intent of the policy. Hence, it appears from the record that Lloyd’s knew at all times after December, 1949, that the question of whether the .airplane and engine were damaged structurally in excess of 85% was an issue — in fact the only issue — between the parties.
On November 19, 1951, after the cause had been set for trial in the January Term following (presumably it had been set for January 7th) Lloyd’s filed a “motion to require internal inspection and/or motion for production and inspection under Common Law Rule 27” of the airplane engine. The motion concluded as follows:
“6. Defendants move the Court to stay this cause until plaintiff has disassembled the engine and/or had made the necessary internal inspection, and permitted defendants an opportunity for their witnesses to inspect and check the same.
“7. In the alternative, defendants move the Court to require the plaintiff to permit the defendants to have disassembled said engine so as to show ■without conjecture, definitely the internal condition thereof, said disassembling and examination to be on such terms as to the Court shall prescribe, the initial cost thereof to be advanced by the defendants and to be taxed by the Court as the Court shall finally determine.”
Attached to the motion was an affidavit •of Lloyd’s attorney that said motion was material and relevant to the cause of action .and the defendants’ defense. The affidavit .also stated:
“Affiant further says that he has personally examined the engine of said airplane in company with expert witnesses and said engine shows little if .any structural damage. Affiant further • says that he is advised by expert witnesses that in view of the external appearance of the engine it is a physical impossibility to say that said engine has structural damage of 85% without a disassembling and an internal examination. Affiant further says that the plaintiff has heretofore taken .the deposition of its witness Leon A. Moore on January 26, 1951, and that the cross-examination of said witness as shown by said deposition further supports the necessity for an internal examination.”
There was also filed before the court at that time an affidavit by one Charles Banks stating his qualifications to speak on the subject and that he had examined the engine a few days after the crash and in his opinion the structural damage to the airframe and engine was'“far less than 85%.” 'He further stated:
“That there is very little external evidence of damage to the engine and that in the opinion of your affiant, based on his experience in this field, it is a physical impossibility for this engine to have 85% structural damage with so little external damage to the engine.
“That in the opinion of your affiant the only way that any one can-say with certainty as to the exact extent of the structural damage to said engine is to make an internal examination, which will require the disassembling of said engine; that in the opinion of your affiant it cannot be said that this engine has 85% structural damage without an internal examination and disassembling.”
At the time the motion was presented there was on file in the record not only the answer of Lloyd’s denying liability but its sworn answers to the interrogatories —above referred to — stating that a few days after the crash they had ascertained that neither the airframe nor the engine had sustained 85% structural damage. The lower court, -in considering the motion, had the right and was bound to consider not only the contents of Lloyd’s affidavits but *310 of its answe/ and the answers to the interrogatories. 31 C.J.S., Evidence, § 309, page 1086; Florida Common Law Rules 26 and 20(d).
Upon consideration of the motion and supporting evidence, the lower court entered its order denying the same and it is this action of the lower court that is the principal issue here. Lloyd’s contends that such action was error and prejudicial to its cause.
Upon the threshold, we must not lose sight of the fact that granting or denying a motion of the kind under consideration here, under Common Law Rule 27, 30 F.S.A., is a matter of discretion and not of right. Carter v. Baltimore & O. R. Co., 80 U.S.App.D.C. 257, 152 F.2d 129; Lever Bros. Co. v. Proctor & Gamble Mfg. Co., D.C., 38 F.Supp. 680; Hawaiian Airlines, Ltd., v. Trans-Pacific Airlines, Ltd., D.C., 8 F.R.D. 449; Vermilyea v. Chesapeake & Ohio Ry. Co., D.C., 11 F.R.D. 255; Brauner v. United States, D.C., 10 F.R.D. 468; Hudalla v. Chicago, M., St. P. & P. R. Co., D.C., 10 F.R.D. 363. In order to prevail here, Lloyd’s must show that this discretionary power was clearly abused—and that Lloyd’s suffered thereby. Carter v. Baltimore & O. R. Co., supra; Bowers v. Bixler, 73 Fla. 692, 75 So. 751; Stewart v. Hunter, 65 Fla. 325, 61 So. 623; Sherlock v. Varn, 64 Fla. 447, 59 So. 953.
Lloyd’s urges that to allow the jury to speculate on the question of the amount of damage when positive evidence would have been available after inspection was clearly erroneous and injurious to its cause, and for that reason the lower court grossly abused its discretion in denying its motion. There would be merit in this argument were it not for the fact that Lloyd’s had known for nearly two years that this question would be the principal issue in the trial and had taken no action thereon until just shortly before the trial. At the trial of the cause it developed that such examination could easily have required several weeks and would have been very expensive. It was also shown by experts in the field that damage could be ascertained by external inspection. True, it would probably have been better evidence and may have been given greater weight by the jury if there had been an inspection as requested, but when these advantages are weighed against the delay which could have been occasioned by the granting of the motion, the expenses which would have been incurred by the parties and the fact that even after such examination had been made it would still be a matter of somebody’s opinion as to the extent of the damage, we cannot say that the lower court abused its discretion in denying the motion.
There are other questions raised which have been considered by us but we find no error which could have infected the jury’s verdict or the court’s decision.
Affirmed.
HOBSON, C. J., and THOMAS and ROBERTS, JJ., concur.